Dan WITCHER, Petitioner,

v.

C. C. PEYTON, Superintendent of the Virginia State Penitentary, Respondent.

Civ. A. No. 66–C–44–D.

United States District Court
W. D. Virginia,
Danville Division.

Dec. 15, 1966.

No appearance for petitioner.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the Court upon a petition for a writ of habeas corpus, filed by a State prisoner pursuant to the provisions of 28 U.S.C. § 2241(a) and (c) (3).

Petitioner is currently serving a term of thirty-five years and one day pursuant to his conviction for rape by the Circuit Court for the County of Pittsylvania, Virginia on January 25, 1963. He previously sought and was granted a hearing by the circuit court. After the hearing the state court discharged the writ of habeas corpus by order entered November 29, 1965. On October 3, 1966, the Supreme Court of Appeals of Virginia rejected a petition for a writ of error and affirmed the judgment of the circuit court.

Petitioner now seeks a hearing from this Court, charging that he "is in custody and is deprived of his liberty without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States." This claim is based upon the contention that the grand and petit juries which indicted and tried him were illegally constituted in that members of petitioner's race were intentionally and systematically excluded from jury service. Petitioner is a Negro.

The facts supporting petitioner's contentions may be recited briefly. Slightly more than one-fourth of the adult population of Pittsylvania County is Negro. The 1950 census shows that Pittsylvania County had an adult population of 35,711 of which 9,271 were non-white. The 1960 census reveals an adult population of 31,439, of which 8,604 were non-white. Petitioner contends that within memory of persons living, the number of Negroes summoned for grand jury service has been limited so that the affirmative vote of a Negro member of a grand jury was not essential to an indictment. This contention is supported by petitioner's allegation that on each of the writs of venire facias for the thirty-seven grand juries impaneled from January 1957 through September 1962, the names of Negroes were followed by the designation "(Col.)".

Furthermore, petitioner contends that at no time within the memory of persons living had a Negro served as one of the jury commissioners for the Circuit Court of Pittsylvania County. Never had more Negroes been summoned for jury duty than either litigant might peremptorily strike.

No Negroes were included on ten of the grand juries impaneled from January 1957 through September 1962. Petitioner grants however that one Negro was included on each of the other twenty-seven grand juries, including the grand jury for the September 1962 term which indicted petitioner.

The 1962–63 jury list, from which the jury that tried petitioner was drawn, was

compiled about February 1962 by five jury commissioners. These commissioners made selections from the county's seven magisterial districts. The total selected was 400, of which thirty-one were Negroes. All but one of the magisterial districts were represented by Negroes. The number of Negroes selected in the other six districts ranged from four to six, representing from 4.4% to 19.4% of the total number of jurors selected. During the six terms of court that year, 265 names were drawn, of which sixteen were Negroes. Of thirty-five persons named in the writ of venire facias for the trial of petitioner and others during the January 1963 term, three were Negroes. None of these three was sworn as a juror for the trial of petitioner. On these facts petitioner seeks a hearing by this Court on his writ of habeas corpus.

 This Court will treat petitioner's contentions with regard to both the grand and petit jury at the same time. It is well established that systematic exclusion of a race from juries which indict or try constitutes a denial of constitutional guarantees which must be afforded to the accused in a state court. United States ex rel. Goldsby v. Harpole, 249 F.2d 417 (5th Cir. 1957). This systematic exclusion is generally considered in connection with Negro civil rights cases, but has been held to apply equally to defendants of Mexican descent, where a substantial number of such persons are qualified for jury service. Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). In all of these alleged systematic exclusion cases conscious and purposeful discrimination because of race must be shown and the burden of proof rests with the defendant. United States v. Brandt, 139 F. Supp. 349 (N.D.Ohio 1966).

To determine what constitutes satisfying the burden of proof, it would be well to examine some of the cases that develop the point. Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940), reversed the 1938 rape conviction of a Negro. Negroes represented 20% of the population and almost 10% of the poll tax payers. The Court felt that a minimum of 3000 to 6000 Negroes were qualified under the Texas statute for grand jury service. However, during the period from 1931 to 1938 only five of 384 persons who served were Negro. Only eighteen of the 512 persons summoned were Negro. It was pointed out that thirteen of the eighteen Negroes summoned were listed last on the 16-man jury list, the custom being to select the 12-man grand jury in the order of names on the list. Only one of the remaining five Negroes summoned was listed among the first twelve on the list. Only five grand juries during the period had Negro representation; twenty-seven had none. No Negroes served on any grand juries in 1935, 1937 and 1938, the latter being the term which indicted the defendant. The Court held this practice of token representation was "ingeniously or ingenuously" discriminating.

In Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942), the Court again reversed a rape conviction, where evidence was sufficient to make out a prima facie case of systematic discrimination against Negroes in the selection of grand jurors. The evidence showed a large number of Negroes in Dallas County were literate. From this there was no room to infer that there were none of good moral character, qualified and available for grand jury service under state law. No effort had been made to ascertain whether any Negroes were qualified, which was held a failure by the commissioners to perform their constitutional duties.

Although only one Negro served on the grand jury, the record in another Dallas County case failed to establish that the commissioners deliberately and intentionally limited the number of Negroes on the panel, or that there was discrimination on account of race in the selection of the grand jury. The defendant's murder conviction was affirmed, the court stating:

Purposeful discrimination is not sustained by a showing that on a single

grand jury the number of members of one race is less than that race's proportion of the eligible individuals. The number of our races and nationalities stands in the way of evolution of such a conception of due process or equal protection. Defendants under our criminal statutes are not entitled to demand representatives of their racial inheritance upon juries before whom they are tried. But such defendants are entitled to require that those who are trusted with jury selection shall not pursue a course of conduct which results in discrimination 'in the selection of jurors on racial grounds.' Akins v. State of Texas, 325 U.S. 398, 403, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945).

Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947), involved the murder of a white man. A Negro was indicted by an all-white grand jury and convicted by an all-white petit jury, notwithstanding a timely motion to quash the indictment. The facts indicated that more than one-third of the adult population of the county was Negro. At least 25 qualified male Negro electors were eligible for jury service. However, the venire for the term did not contain the name of a single Negro. No Negro had served on a grand or petit jury in criminal court within the county for thirty years. This was held to be systematic, purposeful, administrative exclusion of Negroes from jury duty contrary to the Equal Protection Clause of the Fourteenth Amendment. The Court stated that such violation was to be determined under the facts in each particular case. The facts in the case created a strong presumption that Negroes had been systematically excluded from jury service because of race. The Court felt it was the state's duty to justify the exclusion as having been brought about for other than racial discrimination. Great stress was laid upon the state's erroneous attempt to justify its failure to have Negroes on particular venire lists from which petit jurors were drawn. The Court emphasized the fact that one particular list did not necessarily reveal discrimination.

Cassel v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950), was the third leading case to arise in Dallas County. Here a murder conviction was reversed, not for systematic exclusion, but for attempting to choose jurors in proportion to the total population. Fifteen per cent of the population was Negro. Of poll tax payers, 6.5% were Negro. Thus, the conviction was reversed despite the fact that 6.7% of grand jury members were Negro. The Court stated:

> Without more it cannot be said that Negroes had been left off grand-jury panels to such a degree as established a *prima facie* case of discrimination. Cassel v. State of Texas, 339 U.S. 282, 285, 70 S.Ct. 629, 631.

Directly on the question of whether grand or petit juries should contain representation proportional to population, the Court said:

> Proportional racial limitation is therefore forbidden. An accused is entitled to have charges against him considered by a jury in selection of which there has been neither inclusion nor exclusion because of race. Ibid. at p. 287, 70 S.Ct. at p. 632.

In Hernandez v. State of Texas, supra, the United States Supreme Court reversed the murder conviction of a citizen of Mexican descent. Population figures revealed that 14% of the county had Latin names. Eleven per cent of the males over 21 years of age and 6 to 7% of all freeholders on the tax rolls were of Mexican extraction. However, over a twenty-five year period, none of the more than 6000 jurors called had been of Mexican descent. This was held a prima facie case for denial of equal protection, where a substantial number of those people of Mexican descent were qualified, but none had served over this long period.

The rape conviction of a Negro in Georgia was reversed where the 1950 county census revealed 55,606 whites and

6224 Negroes, but Negroes had not served on the grand jury for eighteen years. There were six Negroes on the grand jury list among the 534 names, but none had served.

This evidence, without more, is sufficient to make a strong showing of systematic exclusion. The sizeable Negro population in the county, the fact that all-white juries had been serving for as long as witnesses could remember, and the selection on the jury list of a relatively few Negroes who could probably be disqualified for actual jury service all point to a discrimination 'ingenious or ingenuous,' * * It is sufficient to say that petitioner's motion stated and his evidence supported a prima facie constitutional claim. Reece v. State of Georgia, 350 U.S. 85, 88, 76 S.Ct. 167, 170, 100 L.Ed. 77 (1955).

On facts similar to the case at bar, a conviction for rape was affirmed, where Negroes comprised 26% of all males in the county, although only 10 to 15% of grand and petit jury panels since 1953 had been Negro. Negroes had been represented on 80% of grand juries selected, one as high as 23% Negro. "Nor do we consider the evidence in this case to make out a prima facie case of invidious discrimination under the Fourteenth Amendment." Swain v. State of Alabama, 380 U.S. 202, 206, 85 S.Ct. 824, 828, 13 L.Ed.2d 759 (1965).

In the *Swain* case the United States Supreme Court spoke directly to allegations comparable to those raised by petitioner in the instant case:

The overall percentage disparity has been small, and reflects no studied attempt to include or exclude a specified number of Negroes. Undoubtedly the selection of prospective jurors was somewhat haphazard and little effort was made to ensure that all groups in the community were fully represented. But an imperfect system is not equivalent to purposeful discrimination based upon race. We do not think that the burden of proof was carried by petitioner in this case. Swain v. State of Alabama, supra.

Speaking more broadly the Court stated:

We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%. Swain v. State of Alabama, supra.

■■ An additional point should be made about the process of selecting names for grand and petit juries. This Court finds the following comment by the Tenth Circuit to be instructive:

While officials charged with the responsibility of selecting names of persons for service on grand and petit juries may exercise some discretion to the end that competent persons be selected, it is the long and unbroken tradition that methods and procedures must be employed which contemplate grand and petit juries from and truly representative of the cross-section of the community. It is not essential however that every grand jury or petit jury include representatives of all racial, economic, or social groups of the community. Neither is exact proportional representation of ethnic, economic, or social groups a prerequisite to validity.

Bary v. United States, 248 F.2d 201, 206 (10th Cir. 1957). There a motion was made to dismiss the indictment of persons seeking to organize the Communist Party as a group advocating the overthrow of the government by force, because Negroes, wage-earners, and persons of Spanish-American or Mexican descent were allegedly limited to token representation. The Court found no systematic exclusion existed in the clerk's selection of competent persons.

In a habeas corpus proceeding petitioner alleged there had been discrimination on grounds of race in the selection of the jury which tried him for murder in the state court. However, the record of the state court did not show discrimination in the selection of the jury, and the state court's validation of local jury

selection procedure prevailed. Bailey v. Smyth, 220 F.2d 954 (4th Cir. 1955); cert. denied 350 U.S. 915, 76 S.Ct. 200, 100 L.Ed. 802. In reaching its decision, the higher court noted the *Cassel* finding:

If the record here showed no more than that the grand-jury commissioners had considered the Negroes with whom they were acquainted—just as they considered white persons whom they knew—and had found them to be either unqualified for grand-jury service or qualified but unavailable, and did so not designedly to exclude Negroes, the State court's validation of the local procedure would have to prevail. We ought not to go behind such a conscientious process, however rough and ready the procedure of selection of jury commissioners. Cassel v. State of Texas, 339 U.S. 282, 292, 70 S.Ct. 629, 634, 94 L.Ed. 839 (1950).

This Court fails to find that petitioner has stated a prima facie case of discrimination in the selection of grand or petit jurors on the facts presented in his petition. From a survey of the decisions on the subject and from full consideration of the facts presented in petitioner's argument, we find no violation of petitioner's Constitutional rights sufficient to warrant a new hearing.

Therefore, it is hereby adjudged and ordered that the petition for habeas corpus be, and the same hereby is denied. A certified copy of this opinion and judgment is directed to be sent to the petitioner and to the respondent.