**Dan WITCHER, Appellant,**

**v.**

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 11158.**

United States Court of Appeals
Fourth Circuit.

Argued May 5, 1967.

Decided Sept. 1, 1967.

---

S. W. Tucker, Richmond, Va. (Ruth L. Harvey and J. L. Williams, Danville, Va., and Hill, Tucker & Marsh, Richmond, Va., on brief), for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, on brief), for appellee.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge:

Claiming intentional and systematic discrimination against members of his race in the selection of grand and petit juries including the juries which indicted and tried him, Dan Witcher, a Negro prisoner, seeks habeas corpus relief. He is presently imprisoned pursuant to a judgment of the Circuit Court of Pittsylvania County, Virginia, having been convicted on an indictment charging attempted rape and sentenced to a term of 35 years plus one day.[1]

After unsuccessfully applying for state habeas corpus, the prisoner filed his petition, which describes the jury selection process specifically and in detail, in the federal court. The petition states that although more than one-fourth of the adult population of Pittsylvania County is Negro, "the number of Negroes summoned for grand jury service in said County had been limited so that the affirmative vote of a Negro member of a grand jury was not essential to an indictment if the white members of that grand jury concurred in finding a true bill."[2] Of the thirty-seven grand juries impaneled from January 1957 through September 1962, ten were all white, and none of the other twenty-seven included more than one Negro juror. The names of the Negroes on each of the writs of venire facias were without exception followed by the designation "Col.," petitioner's contention being that the unvarying use of the racial designation demonstrates that the limitation of Negroes to not more than one on any grand jury is deliberate. The grand jury which indicted the defendant was summoned pursuant to an order naming seven men, one of whom was designated as follows: "David Logan (Col.) (Dan River District)."

1. In Virginia, the power to impose sentences in all misdemeanor and felony cases resides in the jury. Va.Code Ann. §§ 18.1–9, 19.1–291, 19.1–292 (1960). See Note, Jury Sentencing in Virginia, 53 Va.L.Rev. 968 (1967).

2. "A grand jury * * * shall consist of not less than five nor more than seven persons." Va.Code Ann. § 19.1–150 (1960).

"At least four of a * * * grand jury must concur in finding or making an indictment or presentment." Va.Code Ann. § 19.1–157.

The petition also alleges that, pursuant to a long continued and deliberate policy, never have more Negroes been summoned to serve on a petit jury than could be removed by the use of peremptory challenges.[3] By this means, all Negroes were excluded—"intentionally and systematically"—from the jury which tried the defendant.

The 1962–63 jury list, from which the defendant's jury was drawn, was compiled in February 1962 by five jury commissioners, who are appointed by a judge of the Circuit Court of the county; no Negro has ever been appointed to serve in such a capacity. The Commissioners chose names from each of the county's seven magisterial districts, invariably designating the few Negroes selected as "(Col.)." In one district, no Negro names were picked and in four of the districts, the names of Negroes were placed at the end of each list, clearly identified as such.

For the county as a whole, only 7.8% of the 1962–63 jury list was Negro although more than 25% of the total adult population is of that race.

In the course of the six terms of court held during that year, 265 names were drawn, but only 16, or 6% were Negro. No more than three Negroes were ever drawn from the pool for any one writ of venire facias, and all were clearly designated as Negro on the writ which summoned them. Of the thirty-five persons named in the writ of venire facias for the defendant's trial only three were Negroes and they were clearly labeled "Col." Negroes thus constituted only 8.6% of the venire for the January 1963 term. None of the three Negroes named in the writ ultimately served on the defendant's jury.

■ These factual allegations, if true, state a prima facie case of unlawful discrimination. In response to a challenge to Georgia's system of jury selection, which required jury commissioners to select the names of prospective jurors from the tax digest, in which the names of Negro taxpayers were designated by a "(c)," Justice Clark, speaking for a unanimous Court, declared that under such a system "the opportunity for discrimination was present." Whitus v. State of Georgia, 385 U.S. 545, 552, 87 S.Ct. 643, 647, 17 L.Ed.2d 599 (1967) (decided subsequent to the District Court's opinion in the present case.)[4]

He further noted that

"the disparity between the percentage of Negroes on the tax digest (27.1%) and that of the grand jury venire (9.3%) and the petit jury venire (7.8%) strongly points to * * * [the] conclusion [that the jury commissioners resorted to discrimination]." [5]

3. "In every case of a felony there shall be selected from the persons summoned, as aforesaid, a panel of twenty persons, free from exception, from which panel the Commonwealth may strike four and the accused four, and the remaining twelve shall constitute the jury for the trial of the accused." Va.Code Ann. § 19.1–207 (1960).

4. Justice Clark found the circumstances in *Whitus* which provided the "opportunity for discrimination" to be similar to those condemned in Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). There the names of prospective Negro jurors were printed on yellow tickets and placed in the jury box, while the names of white persons were printed on white tickets. The Court stated that
"Even if the white and yellow tickets were drawn from the jury box without

discrimination, opportunity was available to resort to it at other stages in the selection process."
Id. at 562, 73 S.Ct. at 893. Cf. Hamm v. Virginia State Bd. of Elections, 230 F.Supp. 156 (E.D.Va.) (unanimous three-judge court) (Bryan, J.), aff'd sub nom. Tancil v. Woolls, 379 U.S. 19, 85 S.Ct. 157, 13 L.Ed.2d 91 (1964) which held that statutes requiring separation of the races on poll tax, residence-certificate and registration lists, as well as on personal property and real estate assessment rolls, were invalid on equal protection grounds as there was no showing that any legitimate purpose was served.

5. A footnote in *Whitus* referring to Finkelstein, The Application of Statistical Decision Theory to the Jury Discrimination Cases, 80 Harv.L.Rev. 338 (1966),

Ibid. The Court therefore held that the petitioners had made out a prima facie case of purposeful discrimination.[6]

The case before us is clearly distinguishable from Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), which the District Court thought presented a similar factual situation. 261 F.Supp. 1018, 1020 (W.D.Va. Dec. 15, 1966). There was no allegation in *Swain*, as there is here, that the names on the jury lists compiled by the commissioners for Talladega County, Alabama were in any way racially designated nor was there an allegation of an attempt to isolate the names of prospective Negro jurors at the end of each jury list. Thus the "opportunity for discrimination," Whitus v. State of Georgia, 385 U.S. at 552, 87 S.Ct. 643, was not a fundamental part of the jury selection system under attack in *Swain*.[7]

■ Petitioner is not, as the State erroneously contends in its brief, seeking proportional representation of the races on each grand jury, rejected in Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1954). The allegation is that the deliberate inclusion of one and only one Negro on each of 27 grand juries is the "forbidden token inclusion" critically referred to in Swain v. State of Alabama, 380 U.S. 202, 206, 85 S.Ct. 824 (1965). "Racial limitation no less than racial exclusion in the forma-

tion of juries is an evil condemned by the equal protection clause." Akins v. State of Texas, 325 U.S. 398, 407, 408, 65 S.Ct. 1276, 1281, 89 L.Ed. 1692 (1945) (Murphy, J., dissenting).

■ Our District Court dismissed the petition without holding a hearing, without receipt of the record of the state habeas court proceedings, and without even notifying the Commonwealth's attorney or calling for an answer. In this court, the Attorney General acknowledges that the District Court's order cannot stand, and that the case must be remanded. However, just as petitioner complains of the irregularity in terminating the proceedings without a hearing, the Commonwealth's attorney complains of the hollow victory handed him. The course pursued has needlessly burdened both the prisoner and the state officials. Unless a case is patently frivolous, and the allegations of the petitioner as outlined above cannot possibly be treated as such, a hearing should be conducted. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). If the District Court had held a hearing, the record would be before us for review. If it had relied on the findings of fact of the state court, then the record of the state court would necessarily be included. Where this court has before it neither the record of a factual inquiry made independently by the District Court nor

notes the high improbability of obtaining by random selection, the results found in that case. Petitioner presents an analogous argument here.

6. The Supreme Court, citing *Whitus*, recently reversed the denial by the Supreme Court of South Carolina of a writ of habeas corpus in which the petitioner had challenged that state's jury selection system. Bostick v. State of South Carolina, 386 U.S. 479, 87 S.Ct. 1088, 18 L.Ed.2d 223 (1967), reversing 247 S.C. 22, 145 S.E.2d 439 (1965). There, although the names of prospective jurors were placed upon the jury list without any designation of race, the names on the Registration Books from which the jury lists were prepared were racially designated. The South Carolina decision was summarily reversed, even though all but one witness

testified that there was no conscious or purposeful effort to include or exclude Negro jurors, and the court records showed that one Negro served on the grand jury which indicted the defendant, and two Negroes were on the panel of petit jurors at the term in which the defendant was tried.

7. For commentary critical of the *Swain* case, see e. g., Finkelstein, The Application of Statistical Decision Theory to the Jury Discrimination Cases, 80 Harv. L.Rev. 338 (1966); Comment, Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All-white Jury, 52 Va.L.Rev. 1157 (1966); Note, Fair Jury Selection Procedures, 75 Yale L.J. 322 (1965); Note, Use of Peremptory Challenges to Exclude Negroes from Trial Jury, 79 Harv.L.Rev. 135 (1965).

one relied upon by that court, we are in no position adequately to perform our reviewing function. Townsend v. Sain, supra; see Holly v. Smyth, 280 F.2d 536 (4th Cir. 1960).

We conclude that the defendant Dan Witcher is entitled to a hearing and an opportunity to establish the facts alleged in his petition, and the Commonwealth is entitled to an opportunity to contest the petitioner's claim, if so advised. If deliberate and purposeful discrimination is established, the District Court should grant appropriate relief.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.