**Robert Lee BATTLE, Petitioner,**

v.

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 67–C–97–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

May 8, 1968.

---

Overton P. Pollard, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

Having exhausted his available state remedies as required by 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), petitioner is properly before this court on his petition for a writ of habeas corpus. The state records emanating from both the original criminal trial and from petitioner's state habeas corpus proceeding have been reviewed by this court. They are hereby considered part of and incorporated into the record in this proceeding. Their clarity and completeness with respect to the allegations advanced by the petitioner enable this court to dispense of the requirement of a plenary hearing and enables the court to hold on the present record that petitioner is not entitled to the relief which he seeks.

The sentence petitioner attacks was imposed by the Hustings Court of the City of Roanoke on March 25, 1965. Tried before a jury on his plea of not guilty to a charge of having stolen a television, petitioner was found guilty and sentenced to three years. He appealed to the Supreme Court of Appeals of Virginia, but a writ of error was denied on October 6, 1965.

Apparently adopting the policy that one miss might well merit another try, the prisoner's petition advances a proliferation of deficiencies in the handling of his case by the police, the Commonwealth Attorney and his own counsel. Several are patently frivolous; several factually disproved. Some of his claims apparently require more extended discussion but still will not serve as a basis for the relief which he seeks.

According to petitioner, he was arrested and held without a warrant. At no time before he was brought before a magistrate was one ever shown to him or served upon him. He was denied bail. He was not advised of his constitutional right to remain silent nor of his right to counsel. He was interrogated without the presence of an attorney. His court appointed counsel rendered ineffective assistance during all stages of the proceeding including the appeal. The all white jury before which he was tried was the product of racial discrimination in the selection of the petit jury list, and the grand jury which indicted him was similarly defective. Improper conduct on the part of the Commonwealth Attorney was prejudicial to petitioner, and deprived him of the possibility of a fair trial. Some chronicle of the events surrounding petitioner's apprehension, trial and conviction are necessary in order to evaluate these allegations. The following summary is what the court believes to be a proper account of the circumstances.

The Northeast Hardware Store had been burglarized on two successive nights, December 29 and December 30, 1964. The proprietor was able to identify as missing from the first burglary a

pair of binoculars, and the description of the stolen merchandise was circulated to various pawn shops in the City of Roanoke. Apparently on December 30, 1964 petitioner had pawned an article which fit the description of the stolen property and when he again called the pawn shop saying that he had something else he wished to pawn, the pawn shop owner notified the police. Petitioner was apprehended shortly after he had left the pawn shop. At that time, petitioner was placed under arrest and charged with the statutory burglary of the hardware store. He was not then charged with larceny of the television set, the subject of the conviction under attack. After his arrest, petitioner was taken to the jail where he spent the night.

The next day when petitioner was questioned by police detectives he attempted to account for his possession of the stolen merchandise including the television set, by explaining in an exculpatory manner that he had bought it from another man whose identity he did not know but who he was willing to try to find for the police officers. The search proved ineffectual and later petitioner was to change his story and claim that he hadn't been sold the merchandise, but had been asked by another person to pawn it. The sole effect of petitioner's story was to implicate himself in the theft of the television set. Sometime that day, petitioner was brought before a magistrate and bound over on the charge of statutory burglary.

December 31, 1964, the day petitioner was arrested, was a Thursday. It was not until January 2, Saturday, that the police established the connection between the petitioner and stolen television set; but upon their discovery he was charged additionally with larceny. This charge was entered on the docket Sunday, January 3. While petitioner was being held in jail during this period, warrants for his arrest on both charges were sworn out and delivered to him.

Petitioner was not brought before a magistrate on the charge of having stolen the television set until Monday, January 4, that being the first day the magistrate's court was in session since the day petitioner's complicity in the offense had been discovered. Immediately counsel was appointed to represent petitioner at the preliminary hearing to be held the next day.

Petitioner claims, and it is not denied, that he was held without bail during the period from his arrest until he was brought before a magistrate on January 4th. Whether petitioner was held without bail after he had been bound over by the magistrate is undisclosed.

■ There can be no doubt that prior to the time he was brought before a magistrate on the larceny charge, petitioner was questioned by the police and although he did not deliberately make inculpatory statements, his attempted explanation of how he had come into possession of the stolen articles implicated him further. Petitioner says that prior to the questioning he was not advised of his right to remain silent or that anything he said could be used against him. The allegation as to an involuntary statement was not raised in the state habeas corpus proceedings. Accordingly, this allegation is dismissed without prejudice to further proceedings upon a showing that the available state remedies have been exhausted.

As was customary procedure in Hustings Court at that time, the day before his preliminary hearing took place, an attorney, in this instance, Mr. Wilmer M. Dillard, was appointed to represent the petitioner. Mr. Dillard had almost twenty years experience at the bar and had represented the petitioner successfully in another case about two or three months before. Immediately after his appointment Mr. Dillard conferred with the petitioner, and, as the record shows, met with him several times thereafter. Mr. Dillard discussed the charges with the petitioner and the two conferred on possible defenses. Petitioner requested that several witnesses be called. Mr. Dillard obtained from him the names of those persons and interviewed them. The case was first set for the February

term of court but because of the absence of a material defense witness, the case, upon counsel's request, was continued until the March term. This meant, as Mr. Dillard pointed out, that two separate preparations for trial were made, with consequent additional conferences with the petitioner.

The trial took place March 25, 1964. From a discussion among the court, Mr. Dillard and the Commonwealth Attorney, it is readily inferred that although the defense only presented two witnesses at the trial, Mr. Dillard had intended to present several others who turned out either to have nothing to contribute or were in some way detrimental to petitioner's case.

During the trial Mr. Dillard labored ardently on petitioner's behalf. After the jury had returned a verdict of guilty and petitioner had been sentenced to three years, petitioner requested an appeal. The court immediately authorized Mr. Dillard to continue to act in petitioner's behalf and Mr. Dillard subsequently applied for a writ of error to the Supreme Court of Appeals of Virginia arguing the case before Justices Jordan and Snead.

Petitioner claims two other infirmities in the trial. First, he asserts racial discrmination in the method of jury selection. Prior to the trial, petitioner claims he requested his counsel to get him a jury with "six white and six colored". Mr. Dillard does not remember petitioner having made this request and has testified unequivocally that even if the request had been made it could not possibly have been granted. Second, petitioner asserts misconduct on the part of the Commonwealth Attorney. He finds prejudice in a remark made by the Commonwealth Attorney in response to petitioner's introduction of a newspaper clipping which petitioner hoped would illustrate a discrepancy between the date the hardware store was broken into and the date of the offense of which he was charged. Also, discrimination, he says, follows from an inference in the Commonwealth's closing argument that he was lazy and good for nothing.

The court turns now to an evaluation of petitioner's case. His contentions are considered in the order in which they are presented.

Petitioner claims that he was never given a warrant or shown any statement of the charges against him. This court does not attempt to pass on whether such a deficiency would amount to a denial of petitioner's constitutional rights but finds instead as a matter of fact that petitioner did receive warrants and was advised of the charges upon which he was being held.

As far as this court can determine petitioner was held without bail over the weekend of January 2 and 3, 1965. While the policy today is in favor of releasing those charged with crime upon a recognizance unless there is a strong necessity for holding them in jail, there is not here sufficient basis for an argument that the failure to allow petitioner his freedom on bail for those two days invalidates the subsequent conviction. A showing that petitioner through inaccessibility to counsel was prejudiced in the preparation of his defense may in the proper case rise to constitutional proportions. U. S. ex rel. Cooper v. Reincke, 219 F.Supp. 733 (D. Conn.1963) aff'd 333 F.2d 608 (2d Cir. 1964). However, in this case there is no showing that petitioner's defense was in any way debilitated thereby.

Petitioner would have this court hold that the mere lapse of time between the date of his arrest and the date on which he was first brought before a magistrate wrings infirmity upon everything which transpired during that period and was so inherently prejudicial to him that all subsequent proceedings were devoid of due process. This court will not ascribe to such a view. A showing of undue delay will work to petitioner's benefit in his attempt to invalidate any confession made during that period. However mere delay in and of itself without a showing by the petitioner that he

was in some way prejudiced will not yield a constitutional infirmity. Moreover, this delay, not so long in itself, is entirely understandable because of the likely unavailability of a magistrate over New Years weekend.

Ineffective assistance of his counsel, petitioner's primary allegation is also disproved by the facts. Mr. Dillard who was appointed the day after petitioner was brought before a magistrate immediately sought out his client. In subsequent conferences with petitioner Mr. Dillard discussed at some length the conduct of the defense. He interviewed and subpoenaed witnesses. When a material witness was absent, Mr. Dillard requested and received a continuance. When the case was rescheduled for the March term of court, Mr. Dillard had the time to prepare an adequate defense and every indication is that he used this time to best advantage. Petitioner finds one specific problem with Mr. Dillard's representation at this time; Mr. Dillard did not secure for petitioner a jury comprised of six white and six colored persons. Mr. Dillard could never have complied with this request. Its assertion as a ground of relief is patently frivolous.

A review of the trial transcript by this court reveals the excellent job done by Mr. Dillard. He conducted pointed cross examination directed to what appeared weak points in the Commonwealth's case. He intelligently left alone those areas where it appeared he had no chance of succeeding. He objected strenuously to the Commonwealth's exploration into matters damaging to petitioner. He attempted to elicit on direct examination evidence which would appear more damaging if brought out by the Commonwealth. Hampered by the lack of credible witnesses, Mr. Dillard did the best he could with the defense. Petitioner claims that it was inadvisable for counsel to have placed him on the stand. Mr. Dillard's feeling was that without petitioner's testimony there could have been no defense at all. With this the court agrees. Mr. Dillard displayed throughout the trial and on his appeal to the Supreme Court of Appeals of Virginia, the excellent judgment of a good trial lawyer. His conduct of petitioner's defense is characterized by that ardor and zeal which merit commendation and thanks from the petitioner; not a suggestion of incompetency.

The Commonwealth Attorney, it it true displayed some over-zealousness and exaggeration in his closing statement to the jury and perhaps in his rejoinder to the introduction in evidence of petitioner's newspaper clipping. On several occasions the jury was instructed to disregard such remarks. This court does not feel, however, that there was such impropriety in his conduct as to constitute a denial of due process.

No negroes were on the jury which tried and convicted the petitioner, but petitioner has never presented any evidence of the method of jury selection employed by the City of Roanoke at the time of his trial. In short, there are present here none of the factors which would place upon this court the duty of further inquiry that were present in the recent case of Witcher v. Peyton, 382 F.2d 707 (4th Cir. 1967). The participants in the trial recalled that the panel of twenty contained one negro and the Commonwealth Attorney testified that juries in Roanoke were usually drawn from a panel containing five or six negroes. Of course, petitioner is not entitled to a panel representing a cross-section of the community in the sense that it must contain a proportional representation of the races. Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950). He is entitled, however, to have the procedure by which names are selected to be placed in the jury wheel conducted in a non-discriminatory manner. Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966). Furthermore, if petitioner had alleged facts showing that due to the system used, the opportunity for discrimination was present then it would be upon the state to explain the lack of a negro on petitioner's jury. Certainly as Witcher v. Peyton, supra, points out, proof of a

purposeful discrimination will serve to invalidate a conviction. But no facts tending to show that either the grand jury that indicted petitioner or the petit jury that tried him were the product of discriminatory selection have been suggested.

This court has reviewed petitioner's allegations of constitutional infirmity against the background of the trial record and the records of the state habeas corpus proceeding and no adequate basis for overturning the verdict has been found. Accordingly, it is ordered that the petition for a writ of habeas corpus be and the same hereby is denied and the petition is dismissed.