**Harrison Cantor COOPER, Jr., Petitioner,**

v.

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 68–C–63–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Dec. 23, 1968.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION AND JUDGMENT

DALTÓN, Chief Judge.

Harrison C. Cooper, Jr., the petitioner, was convicted of second degree murder in the Hustings Court of Roanoke, Virginia, on March 30, 1965. His ap-

peal from that conviction by writ of error to the Supreme Court of Appeals of Virginia was denied. Claiming that his conviction was illegally obtained, the petitioner sought habeas corpus relief in the state courts under Va.Code Ann. §§ 8–596—8–609 (1950). After a full hearing on the matter, the trial court denied the writ, and the Supreme Court of Appeals affirmed this ruling. Cooper has exhausted his state remedies, and now seeks a writ of habeas corpus in this court.

From the testimony of the witnesses for the prosecution, which was consistent in all material respects, the jury reasonably could have found that the sequence of events surrounding the homicide occurred as follows. On the night of January 3, 1965, Cooper was at the home of a friend in the company of four companions. Two of the men present were engaged in what was apparently a good-natured dispute over whether one owed the other ten cents. Cooper, who was seated and was not participating in the argument, remarked that he saw no sense in the argument and suggested that it cease. One of the disputants, Bobby Lee Hardy, the soon-to-be deceased, objected to Cooper's remark, saying something to the effect that it was none of Cooper's business. After a brief exchange of words the deceased, apparently out of sheer perversity, slapped Cooper across the face. A few moments later Cooper after making some such remark as, "Slap me when I come back," left the house. About ten minutes later Cooper returned to the front door, and after assuring one of the occupants that he did not intend to cause any trouble, he was readmitted. The argument over the ten-cent debt was still underway when Cooper entered the room and sat down. As told by one witness, Cooper then said to the deceased, "Now, Bobby, you slap me like you did before." The deceased accepted the challenge with gusto, knocking Cooper back on the bed where he was sitting. Cooper reacted by standing up and pushing his assailant back with one hand,

while at the same time drawing a .22 caliber revolver from his pocket and firing two shots at the deceased. Cooper then stepped toward the door, turned and fired one or two more shots, and hastily departed.

One of the state's witnesses testified that he owned the gun used by Cooper, and that he had left the gun at Cooper's house earlier that evening, the inference being that Cooper returned to his house to get the gun during the interval between the first slapping episode and the shooting. Cooper's account of the homicide, as told at his trial, differs from the foregoing in the following respects. He in no way provoked either assault, nor did he make any threat of retaliation after the first assault. He did not return to his house to get the gun, since it was in his pocket at the time he was first struck by the deceased. When he was struck a second time by the deceased, the latter also threatened to "stomp his brains out." Cooper says he fired the gun only in an effort to protect himself and scare off the deceased.

■ The petitioner now contends that the instructions given by the trial judge on the elements of first and second degree murder, and his conviction for second degree murder, were not supported by the law and the evidence. This objection was made by the petitioner's counsel at the close of the evidence and thoroughly argued before the trial judge after the verdict was returned. We agree with the trial judge that the jury reasonably could have found that the homicide stemmed from malice and not from such a sudden passion as would support a finding of voluntary manslaughter. See Brown v. Commonwealth, 86 Va. 466, 10 S.E. 745 (1890). Even if this were a question on which reasonable and unbiased minds could differ, it would not be grounds for relief in a federal habeas corpus proceeding unless the trial record was so devoid of evidence as to deny due process of law. Stevens v. Warden, Md. Penitentiary, 382 F.2d 429 (4th Cir. 1967); Faust v. State, 307 F.2d 869 (4th Cir. 1962),

cert. denied, 371 U.S. 964, 83 S.Ct. 547, 9 L.Ed.2d 511 (1963).

■■ For the same reasons we reject the petitioner's contention that relief should be granted on the ground that his conviction was based on perjured testimony. Again the question is basically whether the evidence supports the conviction, and except in the extreme case, insufficiency of evidence is not a basis of federal habeas corpus relief. See Silva v. Peyton, 264 F.Supp. 909 (W.D.Va.1967). Moreover, other than the fact that the petitioner's version of the homicide differs from that given by other witnesses, there is nothing in the record to support petitioner's allegations of perjury or knowledge thereof on the part of the Commonwealth's Attorney.

■■ There is likewise no merit to the petitioner's claim that he was denied the effective assistance of counsel. Cooper's parents retained one of the most experienced criminal lawyers in Roanoke. Petitioner's attorney previously had been Commonwealth's Attorney for more than twenty years, and after entering private practice about one-fourth of his practice was criminal defense work. The record reveals neither errors in trial strategy nor lack of zeal on the part of counsel. Petitioner admits he conferred with his counsel at least three times, and according to the attorney's testimony at the state habeas corpus hearing, every phase of the case was discussed with the petitioner, and a full investigation of the facts was made. Petitioner's main complaint regarding his defense is that none of the character witnesses which he requested were summoned to testify at the trial. This omission was not due to oversight or neglect. As explained by petitioner's counsel, if he had brought Cooper's character into issue, the state could have brought out the fact that the petitioner on two previous occasions had been sentenced by the juvenile court to a youth correctional institution. Defense counsel's decisions as to trial strategy, even where mistaken, are not grounds for federal habeas corpus relief absent egre-gious error which reduces the trial to a farce or a mockery of justice. Newsom v. Smyth, 261 F.2d 452 at 454 (4th Cir. 1958), cert denied 359 U.S. 969, 79 S.Ct. 883, 3 L.Ed.2d 837 (1959).

■ Petitioner next argues that he was not properly advised of his rights prior to making a statement to the police. This allegation is denied by the officer who took the statement shortly after the petitioner had voluntarily submitted to arrest. The question of whether petitioner was properly advised of his rights as required by Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964) is irrelevant since no statement made by the petitioner was admitted into evidence at his trial. Nor has petitioner even suggested how his voluntary statement might have prejudiced him.

We have found nothing in the record which discloses any irregularity, much less illegality, regarding petitioner's conviction and confinement. Accordingly, the court does hereby adjudge and order that the relief requested should be and hereby is denied, and the petition for habeas corpus is hereby dismissed.