Wesley Howard WILSON, Petitioner,

v.

J. D. COX, Superintendent, Virginia State
Penitentiary, Respondent.

Civ. A. No. 70–C–8–D.

United States District Court,
W. D. Virginia,
Danville Division.

April 17, 1970.

Edward J. White, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus filed in forma pauperis by Wesley Howard Wilson, a state prisoner, pursuant to 28 U.S.C.A. § 2241.

Petitioner Wilson is currently serving a thirty year sentence in the Virginia State Penitentiary pursuant to a judgment of the Corporation Court of the City of Danville, imposed on January 19, 1966, for first degree murder. The petitioner was found guilty by a jury and sentenced to thirty years imprisonment. The record indicates that no appeal was taken from this conviction, however, during the past three years the petitioner has sought habeas corpus relief.

On August 11, 1966, Wilson filed a petition for a writ of habeas corpus with the Corporation Court of the City of Danville. After a series of continuances, the petitioner was afforded a plenary hearing on the 8th of June, 1967. The court denied and dismissed the petition on the 27th of June, 1967. Petitioner Wilson was represented by court appointed counsel at this hearing. No appeal was taken from said hearing.

On September 12, 1968, a second habeas corpus petition was filed in the Corporation Court of the City of Danville. Some six days later the court denied and dismissed the petition.

A third petition was filed in the same Corporation Court on the 13th of March, 1969. The Court again denied and dismissed the petition on the 21st of March, 1969, but granted petitioner an appeal therefrom. On the 3rd of December, 1969, the Virginia Supreme Court of Appeals affirmed the decision of the Corporation Court. The issues presented in the third petition encompass the same issues that are now before this court in Civil Action Number 70–C–8–D. Therefore, the petitioner having presented the above mentioned issues before the Virginia Supreme Court of Appeals, this court concludes that an exhaustion of available state remedies has been fulfilled in compliance with 28 U.S.C.A. § 2254, as interpreted in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 837 (1963).

Petitioner Wilson's first claim is that "negroes were systematically and discriminatorily excluded from the Grand Jury which indicted your petitioner". A review of petitioner's brief and respondent's answer thereto, demonstrates that petitioner's allegation of systematic discrimination of negroes from grand jury service is derived from the factual situation in the case of Witcher v. Peyton, 4 Cir., 382 F.2d 707 (1967). Both the *Witcher* case and the case at bar were tried during the 1959–1966 period discussed in *Witcher*. The primary allegations raised in *Witcher* centered on an intentional and systematic discrimination against members of the negro race in the selection of grand and petit juries in Pittsylvania County, Virginia. In the case at bar, petitioner Wilson points out on Page 7 of his amended complaint that there was no discrimination on the petit jury, but only on the grand jury in Danville, Virginia. Other than this mere statement by the petitioner, and the facts as presented in the *Witcher* case, petitioner Wilson has made no basis for his claim. On the one hand, Wilson contends that his indictment by a grand jury in Danville was illegal because the factual matters in the *Witcher* case pointed to a systematic discrimination of grand juries in Pittsylvania County. Next, petitioner contends that there was no illegality in

the selection of the petit jury in Danville, but that discrimination did exist in Pittsylvania County, as stated in the *Witcher* case.

This court has reviewed the *Witcher* case and its application to the case at bar and concludes that petitioner's claim is without an adequate factual foundation. The court in *Witcher* was faced with a substantial factual basis upon which claims of discrimination could have been proven. In the case before this court no "substantial" factual proof has been presented at all. Without an adequate factual basis the court cannot grant the petitioner a hearing as provided for in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The Fourth Circuit Court of Appeals emphasized in *Witcher* that a hearing should be granted the petitioner "unless a case is patently frivolous". The court views Wilson's allegation of systematic discrimination of negroes from the grand jury in Danville as "patently frivolous".

■ This court has recently considered a similar contention in the case of Hairston v. Cox, 311 F.Supp. 1084, which arises out of a jury conviction in the Circuit Court of Henry County. In that case we said a petitioner, in order to obtain relief, must demonstrate to the court purposeful discrimination which is based on race. Likewise, purposeful discrimination may not be assumed or proved by the mere assertion of the petitioner that such discrimination did exist. See Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

Therefore, the burden of proof is placed squarely on the petitioner at the outset and not upon a factual situation found within a totally different case. Petitioner's claim seems nothing more than a mere assertion, at the most. In accordance with the foregoing, the court concludes that the petitioner has failed to establish a claim upon which habeas corpus relief can be granted.

■ The second allegation raised by Wilson is that the evidence, as presented, was insufficient to support the verdict of first degree murder. This court follows established procedures which make it clear that an inquiry into the sufficiency of the evidence is not within the proper functions of a federal court when reviewing a state conviction by way of habeas corpus. Our inquiry, based upon the records before the court, is one which only considers whether there was *any* evidence to support the verdict, not the sufficiency of such evidence. The district court in United States ex rel. Simmons v. Commonwealth of Pa., 292 F. Supp 830, 833 (1968) said:

   \* \* \* [T]he cases have held that federal jurisdiction is established only when the petitioner has alleged that there was a total absence of evidence to support a guilty verdict. See, e. g. Deham v. Decker, 361 F.2d 477 (C.A. 5, 1966), and Edmondson v. Warden, Maryland Penitentiary, 335 F.2d 608, 609 (C.A. 4, 1964). To permit a federal court acting upon a petition for a writ of habeas corpus to inquire further than this into allegations challenging the sufficiency of the evidence presented at the state criminal trial, would be to improperly convert the federal court into a substitute for a state appellate court. See, e. g. United States ex rel. Bower v. Banmiller, 232 F.Supp. 627, 628–629 (E.D.Pa., 1964).

■ This court has followed this procedure in Wheeler v. Peyton, 287 F.Supp. 930, 931 (W.D.Va., 1968) and Cooper v. Peyton, 295 F.Supp. 21, 23 (W.D.Va., 1968). Also, the Fourth Circuit Court of Appeals in Grundler v. North Carolina, 283 F.2d 798, 802 (1960) expressed a similar concept.

   \* \* \* [N]ormally, the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials, are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a

federal habeas corpus is not to serve as an additional appeal.

In light of the above, the court concludes that the record amply demonstrates that evidence was present to support the ultimate conviction and sentence.

██ Thirdly, petitioner Wilson contends that since his fellow co-defendants received lesser sentences of 20 years and 17 years respectively, his ultimate conviction and sentence of 30 years, for first degree murder, was unconstitutional as being "cruel and unusual punishment". This contention is clearly without legal foundation. Wilson's ultimate sentence was within the provisions of the Virginia statute. (See Va.Code Ann. § 18.1–22) This court cannot impeach the sentence that was returned by the jury as being excessive inasmuch as the petitioner was found guilty of first degree murder which is punishable "[by] death, or by confinement in the penitentiary for life, or for any term not less than twenty years".

As emphasized in Howard v. Fleming, 191 U.S. 126, 136, 24 S.Ct. 49, 48 L.Ed. 121 (1903),

* * * [U]ndue leniency in one case does not transform a reasonable punishment in another case to a cruel one.

Thusly, the guaranty under the Equal Protection clause does not mandate a court to impose equal sentences on co-defendants, as in the case at bar, especially when the sentencing procedure is left to the discretion of the judge or jury, and the ultimate sentence is completely within the guidelines of the applicable statute.

██ Fourthly, Wilson maintains that he did not have the effective assistance of counsel during his trial in January, 1966. Petitioner claims that (1) counsel failed to adequately prepare for trial, and (2) that counsel failed to advise Wilson of his appeal rights. As to the first point, a review of the transcripts of the original criminal trial and the subsequent habeas corpus hearing in 1967, shows that Mr. W. Bascom Jordan, Esq., counsel for the petitioner, performed his duties in a very thorough and competent manner. The transcripts show that Mr. Jordan, from the very first moment of his representation of Wilson at the preliminary hearing, vigorously defended petitioner's rights. Not only were the normal trial motions and exceptions made, but Mr. Jordan was successful in his effort to have the petitioner undergo a mental examination prior to his actual trial. (See Habeas Corpus Hearing— Pages 10–14). As to the second point, that is, counsel's failure to advise Wilson of his appeal rights, this court is plagued by the recent holding in Nelson v. Peyton, 415 F.2d 1154 (4th Cir., 1969). In *Nelson*, the court held that the failure to inform a client of his right to appeal amounts to ineffective representation of counsel. The factual situation in *Nelson* shows almost a complete abandonment, by counsel, of any further assistance to the petitioner after sentence had been imposed. Also, the record discloses that at no time during the pre-trial conferences, the actual trial itself and after, was the petitioner informed of his right of appeal. In the case at bar, the evidence shows that this particular point was thoroughly discussed at the plenary hearing on the 6th of June, 1967. Mr. Jordan, in answer to the above mentioned point, remarked as follows:

* * * [A]t the conclusion of the case, upon the Jury's verdict, the defendant was frankly considerably relieved. I told Mr. Link today that he didn't convince the Jury of the death penalty, but he just about convinced the Defendant. So, I was in this position: You have a thirty year sentence, which is a long time. I wouldn't want to have to serve it, but the fact remains this is a capital case. If there were grounds for reversal in this case, the case could be retried and the capital punishment would still be available to the Commonwealth if he could convince another jury of that fact. It is in the record, very clearly * * * that the Defendant is a moderate grade feeble-minded young man. Now, how can I intelligently discuss points of

law and technicalities of proof with a man of his mental condition? So, to answer your question, to bring it down to a point, I was faced with this situation, of making a decision pretty much on my own, because he didn't want it; he was not too unhappy with the verdict; his mother was very much pleased with it; in fact she called me the next day and said she wished she could compensate me for what I had done for her son. I told her that it wouldn't be necessary, that the Commonwealth would do that. But, I was put in the position that should I insist on an appeal and the case was reversed and he came back here and got a death penalty on the second trial, then where would I be, and I didn't want to put myself in that position, not being under any pressure from anybody to appeal it, and that's just about the size of it. (H. C. Hearing— Pages 19 & 20)

Likewise, the Assistant Attorney General, Mr. Overton Pollard, expressed a similar note in the habeas corpus hearing. Mr. Pollard stated:

* * * the question is whether or not there was any indication of a desire to further review the case, and the evidence is completely devoid of any such indication, by the Petitioner's own testimony and the testimony of Mr. Jordan. I think we can certainly sympathize with Mr. Jordan's position. Should he have decided that an appeal would be advantageous and attempted to convince the Petitioner of this, and received a new trial and then had gotten a stiffer sentence, he would have felt pretty badly about his representation. As it turned out, the Petitioner and the Petitioner's family and Mr. Jordan were reason-

ably satisfied with the verdict, taken in the light of what the consequences could have been. (H. C. Hearing— Page 50).

This court accepts the view of Mr. Pollard as a proper analysis of the case before us. To hold differently would be to demise the competent and highly effective performance of Mr. Jordan on behalf of petitioner Wilson.

█ Finally, Wilson contends that the court violated his constitutional rights by applying the McNaughton test as to the question of his insanity. It is well established that the federal courts, when reviewing a habeas corpus petition, must look to the existing substantive law of the state involved. In Virginia, the Supreme Court of Appeals has upheld the view that the burden of proof is upon the defendant to prove insanity by a preponderence of the evidence or to the satisfaction of the jury. See Dejarnette v. Commonwealth, 75 Va. 867 (1881); Wessells v. Commonwealth, 164 Va. 664, 180 S.E. 419 (1935); and Christian v. Commonwealth, 202 Va. 311, 117 S.E.2d 72 (1960). Petitioner Wilson, through the efforts of his court appointed counsel, was afforded an opportunity to dispel any notions of his sanity prior to his trial. Although the criminal trial transcript deals with the "feeblemindedness" [1] of the petitioner, the court upon the concurrence of two qualified psychologists from Central State Hospital, considered Wilson mentally competent to stand trial. (See Original Criminal Trial Transcript—Pages 3–18 and 179–194) and the jury so affirmed such a conclusion.

█ Therefore, given the foregoing, it is the judgment of this court that a separate hearing on the issue of sanity is unjustified.[2] The Fourth Circuit, in

---

1. In 1964, the legislature included the word "feeblemindedness" into § 19.1–227 and § 19.1–228 of the Code of Virginia.

2. See Owsley v. Cunningham, 190 F.Supp. 608, 615 (E.D.Va., 1961) where Judge Hoffman said
   * * * Admittedly, the federal court may, in its discretion, entertain and

consider a review of the issue of insanity at the time of trial, even where the state court has previously determined the same issue after hearing. It is not, however, required to do so. Brown v. Allen, 344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

**214**

Thomas v. Cunningham, 313 F.2d 934 (1963) discussed the proper procedure in cases where the question of insanity or feeblemindedness is to be considered. In light of the *Thomas* case, this court is of the opinion that the original trial transcript clearly shows that the petitioner was afforded all the proper procedures necessary in the protection of petitioner's constitutional rights.

For the foregoing reasons, it is the judgment of this court that petitioner Wilson's prayer for relief by way of his petition for a writ of habeas corpus be denied and dismissed.