**George H. CAUDILL, Appellant,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 10553.**

United States Court of Appeals
Fourth Circuit.

Argued June 23, 1966.

Decided Sept. 21, 1966.

Edwin P. Munson, Richmond, Va. (Court-assigned counsel) [Williams, Mullen & Christian, Richmond, Va., on brief], for appellant.

James Parker Jones, Asst. Atty. Gen. (Robert Y. Button, Atty. Gen., and Reno S. Harp, III, Asst. Atty. Gen., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

This is an appeal from the district court's denial of a writ of habeas corpus after a plenary hearing. The petitioner contends that he lacked the assistance of counsel at critical stages of his pre-trial and the effective assistance of counsel at his trial because the issues of capacity to stand trial and of his mental status at the time of the alleged offense were not raised at his trial. The record itself, as pointed out by the district judge, raises the question of whether the petitioner received a public trial.

The petitioner, who is of extremely low mentality,[1] shot and killed one Robert Dixon, a person of "bad reputation" in the community. Dixon, who was drinking at the time, had gone to the petitioner's cabin in the mud creek section of Mill Creek Community in Tazewell County in the mountains of western Virginia. They quarreled over the sale of some chickens. Caudill ordered Dixon to leave. There was uncontradicted evidence that Dixon had a knife and a gun and that Caudill was afraid of him. After the shooting Caudill turned himself in to the police. The next day he gave a long, incoherent and rambling confession which was introduced in evidence. Shortly thereafter, upon motion of the prosecutor, who had known Caudill for years, he was committed to a state mental institution to determine his capacity to stand trial. Approximately 60 days later the institution reported that " * * * he is not now psychotic or insane and has not been psychotic or insane since admission * * * " and that he was competent to stand trial. Thereafter on January 8, 1960, counsel was appointed, and on February 4th the petitioner in open court waived indictment by a grand jury and his right to trial by jury and consented to trial by the court. The trial, which was completed in one day, took place in the judge's chambers; the petitioner was found guilty of murder in the first degree and subsequently sentenced to 40 years in prison.

We think the case raises serious questions both as to the lack of counsel at the critical stage in the proceedings when the petitioner was committed to a state hospital for 60 days, cf. Timmons v. Peyton, 360 F.2d 327 (4 Cir. 1966), and the ade-

1. The State psychiatrist who administered the Wechsler Adult Intelligence Scale form test reported Caudill's I.Q. Score as: Verbal I.Q. of 77, a Performance I.Q. of 73, and a full scale I.Q. of 74. Such a score would indicate that Caudill was bordering on mental retardation and considered barely able to function outside of a specialized institution. He was not educable in an ordinary school, and rated in the lowest two or three per cent of the population.

quacy of his representation at the in-chambers trial before the judge. The questions with respect to the trial fall into two broad categories: first, whether the defendant had the mental capacity knowingly and intelligently to waive his right to indictment and his right to a trial before a petit jury, and secondly, whether he had constitutionally adequate service of counsel in permitting him to waive these rights and in failing to raise the questions of his client's capacity to stand trial or his mental status at the time he committed the alleged offense. Neither his own counsel nor any of the state's witnesses who testified at the state and federal habeas hearings was willing to make the statement that he felt certain Caudill understood the significance of his conduct before or at the trial. His trial counsel, who testified for the state on direct examination at the federal habeas hearing, said:

"I personally have some reservations, I did then and I do now, about George's capacity. But I thought that he was, at the time I was talking to him, it appeared to me he understood what we were talking about."

Yet in the face of this doubt, no question of the defendant's sanity at the time of the offense or his capacity to stand trial was raised by his counsel. At the state habeas hearing the prosecuting attorney stated that he had known the petitioner for years and believed him to be "subnormal," and for that reason had had him committed to the mental institution for examination. It is true that the state mental institution reported that Caudill was neither insane nor psychotic [2] at any time while he was in the hospital and that he was competent to stand trial. It was on the strength of this report that defense counsel "justified" his failure to raise either issue at the trial. It is apparent, however, that had the attorney sought the advice of an expert he would have found that the Wechsler test score contained in the report itself raised serious question concerning his client's mental status which should have been raised at the trial in defending his client on a first degree murder charge under Virginia law. We also point out that the report in question purported to deal and did deal only with the petitioner's capacity to stand trial and not with his mental status with respect to the crime—two separate and distinct standards. Furthermore, this letter report was merely hearsay evidence which though it might justify the court in proceeding to trial, would not, of course, in any respect be definitive of either issue at the trial itself. Cf. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

We refrain, however, from finally passing on these questions. At the hearing below trial counsel for Caudill testified that the trial took place in the Judge's chambers, as was his customary practice. If this is true, a serious question arises as to whether or not the petitioner received a public trial, and since the issue has not been submitted to the Virginia courts, we remand the case to the district court with instructions to hold the matter in abeyance until the petitioner shall have a reasonable time to submit the question of a public trial to the Virginia courts. In Lewis v. Peyton, 352 F.2d 791 (4 Cir. 1965), another case arising from Tazewell County, we held, citing In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1947), that the failure to hold a public trial violated the due process clause of the Fourteenth Amendment which includes the Sixth Amendment's command that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." While the facts and circumstances of this case may be different, the principle is too important to ignore.

Reversed and remanded.

---

**2.** The Virginia statute, Code 1950 § 19.1–228 (1964 Cum.Supp.), though it deals only with capacity to stand trial, is phrased in terms of sanity. Cf. Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966), n. 6.