**Grover Willie NEWMAN, Petitioner,**

v.

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 69–C–37–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

July 2, 1969.

Edward J. White, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court on a petition for a writ of habeas corpus filed *in forma pauperis* by Grover Willie Newman, a state prisoner, pursuant to the provisions of 28 U.S.C.A. § 2241. The petition was originally filed in the United States District Court for the Eastern District of Virginia and was ordered transferred to this court by order dated March 27, 1969.

Petitioner is currently being detained in the Virginia State Penitentiary pursuant to a judgment of the Circuit Court of Carroll County of March 30, 1954, wherein the petitioner was convicted of the crimes of murder and robbery and sentenced to death. This sentence was later commuted to a double life sentence. The conviction resulted after a trial by the court sitting without a jury, in which the petitioner, represented by privately employed counsel, entered a plea of guilty.

A plenary hearing was held in the Circuit Court of Carroll County on December 21, 1967 as the result of a petition for a writ of habeas corpus filed in the state court by the petitioner. By an order dated December 21, 1967 the Circuit Court denied the writ and dismissed the petition. An appeal to the Virginia Supreme Court of Appeals resulted in the writ being denied and the petition being rejected. Thus the petitioner is properly before this court in compliance with 28 U.S.C.A. § 2254, as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Petitioner presents the following claims to the court for consideration: (1) that his conviction was based on an illegally obtained confession (2) that he received ineffective representation of counsel because counsel was not present at the interrogation and because the counsel failed to object to and contest the admissibility of the illegally obtained confession (3) that two guns, which were introduced into evidence, were the result of an illegal search and seizure, and (4) that the refusal of the trial judge to commit the petitioner to a hospital to determine whether the petitioner was mentally competent to stand trial was an abuse of discretion which amounted to a denial of due process.

The facts are these. Grover Newman, in the company of Lanvee Tilton, was taken into custody by police authorities in Galax, Virginia on the evening of February 10, 1954. Although the petitioner denies that he was informed of the purpose of the arrest, the arresting officer, George A. Farthing, Jr. testified at the state habeas corpus hearing that he told the petitioner and Tilton that "they were wanted by the Sheriff's Department by Sheriff Jackson for the shooting, in connection with the shooting of Mr. Bunn." Mr. Bunn, a small store operator, had been robbed and murdered in his store earlier in the day. Once in custody, Newman and Tilton were taken to the local funeral home in Galax where an autopsy was being performed upon the deceased. Inside the funeral home Newman and Tilton were separated and searched. The petitioner testified that he was subject to contin-

uous interrogation while in the funeral home by various people including Steve Shelton, a police investigator, by the County Sheriff, who is now deceased and by the doctor performing the autopsy. The petitioner testified further that he was never warned of his rights and that even at the funeral home no one had advised him of any charges although he surmised from the questions that someone had been killed. The petitioner also claims that no one stated their name or position when interrogating him. On the other hand, Steve Shelton testified that although he saw the petitioner at the funeral home, he did not talk to him, but rather that he assisted in the autopsy, took pictures and had, prior to coming to the funeral home, conducted an "on-the-scene" investigation. Shelton stated that he first talked to the petitioner later the same night at the police station and at that time identified himself. Shelton stated that in his presence the petitioner was advised that he did not have to make a statement and that anything he said could be used against him. Shelton further testified that Newman's friend, Tilton, had already signed a confession and that when parts of Tilton's confession was read to him, the petitioner made a statement which was later reduced to writing and signed by the petitioner. Dale W. LaRue, who was Commonwealth Attorney at the time of petitioner's trial, testified that he participated in the questioning which occurred at the funeral home. LeRue stated that he was introduced to the petitioner as the Commonwealth Attorney by a police officer. LaRue stated that he informed the petitioner that he had a right to remain silent and further that he asked both the petitioner and Tilton whether they wanted to call anybody or talk to a lawyer. LaRue stated that the questioning was not a continuous proposition, but rather was a period of waiting until the autopsy was performed. The petitioner did not recall seeing LaRue at the funeral home. Upon leaving the funeral home the petitioner was transported to the jail in Hillsville, Virginia and placed in a single cell. According to the petitioner he was continuously questioned on the trip to the jail. From the testimony at the state habeas corpus hearing the stay at the funeral home lasted from 6:30 p. m. to around 10:30 p. m., at which time the petitioner was transported to the jail. Sometime between 11:30 p. m. and 12:30 a. m. the petitioner was taken from his cell to a room where the Sheriff confronted and apprised him of the fact that Tilton had confessed. Upon proof that Tilton had indeed confessed the petitioner then made a statement, which was written by Investigator Shelton and signed by the petitioner. The petitioner denies that he was aware of the possible charges and also claims that he was not warned of his rights. Investigator Shelton and LaRue, the Commonwealth Attorney, testified that murder and armed robbery charges were discussed, and again both stated that the petitioner was advised generally of his right to remain silent and that anything he said could be used against him. Shelton testified, that at the time of taking the confession, the petitioner was advised of his right to counsel. The petitioner testified that he was never physically abused or coerced into giving a confession, that he had been resting on his bed for an hour before being called from his cell to give the confession and that he never asked for an attorney, or to contact his family or to communicate with anyone. In addition to the foregoing, the confession itself contains a statement to the effect that the petitioner had been warned of his rights and that the statement was being "freely and voluntarily" given.

The day after the arrest, the petitioner directed the police authorities to the location where a billfold, taken from the deceased, had been tossed after being emptied by the petitioner and Tilton. According to the petitioner he was then returned to his cell and later that day he was handed two warrants by the jailer, one charging murder and the

other charging armed robbery. Three days after the arrest the petitioner's father hired J. L. Tompkins to represent the petitioner. The attorney was also hired by Tilton's family to represent Tilton.

According to the petitioner, he saw his attorney at the preliminary hearing, at the time the attorney requested the court to commit the petitioner to a mental hospital to determine his mental competency to stand trial and at the trial. The petitioner claims that these three times were the only ones that he saw his attorney and that he never had a chance for private consultation. Tompkins, the attorney, testified that because the preliminary hearing was scheduled shortly after he was hired that he waited until the hearing to contact his clients. The attorney testified that he talked to the clients some thirty to fifty minutes before the hearing, telling petitioner that the hearing could be waived, but that it would be beneficial to have the hearing in order to hear the state's evidence. It was at this time that the attorney discussed the confessions and in fact read the confessions to the defendants. The attorney also stated that he talked to the petitioner several times in jail; that he talked to several jurors who had been summoned for jury duty and that all stated if they were on the jury they would electrocute the petitioner; that he moved the court to commit the petitioner to a mental hospital for observation because "I thought any criminal, who had committed a crime that severe, would be entitled to the examination"; that the petitioner never said anything about the methods utilized in obtaining the confession and; that he conferred with the Commonwealth Attorney but could not obtain a favorable recommendation as to a sentence. Based upon his professional opinion and as a result of his investigation, it was his recommendation that the petitioner be tried without a jury and that a plea of guilty be entered. The attorney further testified that a guilty plea was explained to the petitioner as well as the possible penalty.

Thus acting upon the advice of counsel, and as the court records read, the petitioner appeared in the open court and entered a plea of guilty. After evidence was introduced, the court accepted the plea and postponed the imposition of sentence for two weeks pending the completion of a pre-sentence report. Two weeks later, in the presence of his counsel, the petitioner was sentenced to death. The record clearly shows that the attorney was active after the trial in appealing the convictions. Although the petitioner's conviction was affirmed by the Virginia Supreme Court in Tilton and Newman v. Commonwealth, 196 Va. 774, 85 S.E.2d 368 (1955), the co-defendant Tilton won a new trial which ultimately resulted in a sentence of ninety-nine years. In view of Tilton's lighter sentence upon retrial, the attorney was successful in persuading the governor to commute petitioner's death sentence to a double life sentence.

In addressing petitioner's claims this court notes that the petitioner entered a plea of guilty at his trial. The petitioner does not allege that his plea was not voluntary nor does the evidence contained in the record indicate otherwise. In Virginia a plea of guilty to an indictment is a plea of guilty to the highest offense charged in the indictment, McGrady v. Cunningham, 296 F.2d 600, 96 A.L.R.2d 1286 (4th Cir. 1961) cert. denied, 369 U.S. 855, 82 S.Ct. 944, 8 L.Ed.2d 14 (1962), and if entered with the advice of counsel and with knowledge of the consequences of such a plea, the prosecution is relieved of proving any facts. Smith v. Peyton, 276 F. Supp. 275 (W.D.Va.1967). The resulting conviction is based solely upon the plea and not upon any evidence which may have been acquired by the prosecuting authorities. Hughes v. United States, 371 F.2d 694 (8th Cir. 1967). The plea of guilty, having been voluntarily entered and with knowledge of the consequences, makes it unnecessary to determine the validity of petitioner's claims relating to the illegally obtained confession and the illegal search and

seizure since the conviction is based solely upon the plea, not upon any illegally seized evidence. The petitioner's claims, concerning ineffective representation of counsel in that the attorney was not present at the interrogation and that no objection was made as to the admissibility of the confession, are also lacking in merit. The police investigator and the Commonwealth Attorney both testified that petitioner had been advised of his right to have counsel and petitioner, by his own testimony, states that he did not request the presence of counsel. Thus having been advised of counsel and yet not requesting the presence of counsel forms no basis for federal habeas corpus relief. As to the counsel's failure to object to the admissibility of the confession, it is sufficient to say that this, at the most, especially since petitioner never complained of the method used in extracting the confession and since the petitioner entered a guilty plea, was a mistake in counsel's judgment or trial tactics and as such do not provide a basis for federal habeas corpus relief. Tompa v. Commonwealth of Virginia, 331 F.2d 552 (4th Cir. 1964); Bolden v. United States, 105 U.S.App. D.C. 259, 266 F.2d 460 (1964). Thus as to the petitioner's claims concerning the illegally obtained confession and any illegally obtained evidence, this court in view of a guilty plea voluntarily entered and with knowledge of the consequences, can find no basis for federal habeas corpus relief. This court also finds, for the foregoing reasons, no basis for relief based upon petitioner's allegations of ineffective counsel.

■ This court would find, in the absence of a guilty plea, that petitioner's allegations surrounding the illegally obtained confession, the illegally obtained evidence and the ineffective assistance of counsel, are without merit. There is evidence in the record to contradict petitioner's every allegation. The evidence is overwhelming to the effect that when taken into custody the petitioner was advised of the purpose for his detention, that the police authorities properly identified themselves and also advised petitioner of his constitutional rights. Contrary to petitioner's allegations, the evidence shows that petitioner was not questioned continuously for an extended period of time and the petitioner himself testified that he had rested in his cell for an hour before giving a confession and also that he was never subject to any physical abuse. There is also evidence that indicates that a proper search warrant was executed to secure what the petitioner terms as illegally obtained evidence. It is to be noted that petitioner's trial occurred in 1954. The required warnings, advising petitioner of his rights, as announced in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are not applicable to the present case since neither decision is retroactive. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The test, with which we are concerned, is the one employed prior to *Escobedo* and *Miranda,* the test of voluntariness. From a careful examination of the record, including a transcript of the state hearing, we are convinced that the confession was made voluntarily. Additonally, the court finds that petitioner's allegations, as to illegally obtained evidence, are met by sound testimony to the contrary and thus the petitioner has failed to carry the necessary burden of proof to establish a basis for federal habeas corpus relief. See Redd v. Peyton, 270 F.Supp. 757 (W.D.Va.1967).

■ It is not necessary to comment at length upon petitioner's allegations concerning the ineffective representation of counsel. An examination of the factual portion of this opinion will show that the privately employed attorney was active in the petitioner's behalf. "Ordinarily, one is deprived of effective assistance of counsel only in those extreme instances where the representation is so transparently inadequate as to make a farce of

the trial." Root v. Cunningham, 344 F.2d 1, 3 (4th Cir. 1965) cert. denied 382 U.S. 866, 86 S.Ct. 135, 15 L.Ed.2d 104 (1965). Before the petitioner may obtain federal habeas corpus relief he must show by a preponderance of the evidence that the representation was so transparently inadequate as to make a farce of the trial. Redd v. Peyton, 270 F.Supp. 757 (W.D.Va.1967). Petitioner's allegations, when weighed against the testimony of the attorney, fail to meet the necessary burden of proof.

The last of petitioner's claims is that the refusal of the trial judge to commit the petitioner to a mental hospital for observation was a denial of due process. As this court has had occasion to say before "There is no constitutional guarantee that every person indicted for a felony is entitled to a mental examination." Va.Code Ann. § 19.1–228 (1960 Replc.Vol.) provides that if the court or the Commonwealth's Attorney has reason to believe a defendant's mental health is in question, the court may commit the defendant for mental examination. However, this statute places no obligation upon the court or the Commonwealth Attorney in cases when there was no reason to doubt petitioner's mental health. Kerns v. Peyton, 292 F.Supp. 182 (W.D. Va.1968). The record indicates that no evidence was offered to support the petitioner's pre-trial motion for a mental examination, nor does the record indicate at this point any material evidence bearing on any existing mental impairment at the time of the commission of the crime or at the time of petitioner's trial. Thus, the trial judge's refusal to order a mental examination was not an abuse of discretion which deprived petitioner of any constitutional right, nor does it provide a basis for habeas corpus relief in the federal courts.

For the foregoing reasons the petitioner has failed to convince this court that he is entitled to relief based upon any of his claims. It is therefore adjudged and ordered that the writ be denied and the petition dismissed.