**James GRAHAM, Jr., Petitioner,**

v.

**John S. GATHRIGHT, Superintendent of Bland Correctional Farm, Respondent.**

**Civ. A. No. 72-C-30-D.**

United States District Court,
W. D. Virginia,
Danville Division.

June 14, 1972.

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, District Judge.

James Graham petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq., in order to terminate his alleged illegal confinement in the Virginia prison system. Leave to proceed *in forma pauperis* has been granted.

Graham was convicted of two charges of statutory burglary in the Corporation Court of Danville on August 6, 1971, and sentenced to a ten year term in the State Penitentiary on one statutory burglary conviction. The court further imposed a five year suspended sentence on the other burglary conviction, for which petitioner would be placed on probation for five years after the termination of his confinement for the first conviction. At trial, on the advice of his court-appointed counsel, petitioner had pleaded not guilty by reason of insanity. The Supreme Court of Virginia affirmed the conviction on March 13, 1972 by denying his writ of eror.

Petitioner claims here that because he was insane both at trial and when the offense was committed, his trial and commitment violates due process. Having presented his claims to the Supreme Court of Virginia by direct appeal, he has exhausted his state remedies in compliance with 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[1]

1. On appeal petitioner challenged *inter alia* the constitutionality of the statutes prescribing the procedures by which he was found competent to stand trial. He has not raised the identical claims here, but rather simply alleges that he is insane. The issues are so interwoven that further resort to the state courts is futile.

See also Thomas v. Cunningham, 313 F. 2d 934 (4th Cir. 1964). He also alleges that the prison authorities have failed to provide medical treatment for cataracts and pyorrhea. Since these latter claims do not raise questions cognizable in habeas corpus proceedings, the court need not further consider them.

The relevant facts are not disputed. On January 6, 1971 defense counsel asked the court for a judicial determination of Graham's mental capacity to stand trial, pursuant to Va.Code Ann. § 19.1–228. Prior to ordering commitment, the trial court appointed two Danville psychiatrists to examine him. Dr. William J. Ervin, one of the appointees, later reported to the court his diagnosis of moderate to severe mental retardation, from which he opined that petitioner was not competent to stand trial. Upon the Commonwealth's request, petitioner was committed to Central State Hospital on April 5 for examination. After nearly two months' confinement the hospital officials concluded that Graham "is considered mentally competent to plead and participate in any legal proceedings" and they asked that he be remanded to the court's custody. On defense counsel's further request, petitioner was examined at the Forensic Psychiatry Clinic at University of Virginia Hospital. At the pretrial hearing the court received the testimony of Dr. B. R. Ashby, who interviewed petitioner at the Clinic, and that of Dr. Leo E. Kirven, Superintendent of the Central State Hospital. Dr. Ashby surmised that Graham was moderately retarded with an I. Q. of approximately 50, that he knew right from wrong but could not apply the distinction to his own actions, and

that he could not understand the full nature of the proceedings nor give aid to his counsel. Noting that petitioner's I. Q. was 56, Dr. Kirven stated, on the other hand, that petitioner knew right from wrong and could apply the distinction to his acts and that he understood the proceedings and could tell his story to his attorneys. Adducing much of the testimony from its own inquiry,[2] the court agreed with Dr. Kirven that petitioner was mentally competent to be tried.

Proceeding directly to trial, the petitioner waived his right to a jury trial, and, with the consent of the court and the Commonwealth, was tried by the court. Counsel therein relied on the defense of insanity, which issue was resolved against the petitioner.

■■■ An accused is presumed to be sane at the trial and during the commission of the offense, and it is his burden to prove the contrary. Owsley v. Cunningham, 190 F.Supp. 608 (E.D.Va. 1961). Although the efforts to overcome the presumption may be circumscribed by state rules as to the quantum of proof and legal tests of insanity,[3] Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), due process requires that a state shall afford the accused adequate opportunity to raise the issue. Thomas v. Cunningham, supra, 313 F.2d at 938; Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). By statute, Virginia authorizes the procedures for the commitment to a state hospital for observation of an accused where, after hearing evidence, there is reason to believe that his mental condition makes such confinement necessary.[4] Code §§ 19.1–228 et seq.

---

2. The petitioner appeared to resolve much of the issue himself when he stated he knew that taking the victims' property was wrong and that he was in court because of his acts.

3. Virginia follows the M'Naghton rule, supplemented by the "Irresistible Impulse" Test. Rollins v. Commonwealth, 207 Va. 575, 151 S.E.2d 622 (1966). Insanity and feeble-mindedness are placed on the same plane with respect to criminal lia-

bility. Code § 19.1–227 (1971 Cum. Supp.). In order to have the capacity to stand trial the accused must be basically aware of proceedings and the charges against him, and must be able to relate the elementary facts to counsel.

4. There is no constitutional guarantee that all defendants are entitled to a mental examination administered by a qualified physician. E. g. Newman v. Peyton, 303 F.Supp. 462 (W.D.Va.1969). Further-

(1971 Cum.Supp.). Accordingly, upon a proper showing, the court shall commit the accused to a hospital for examination and, under certain conditions, appoint an impartial commission of qualified experts in the field of psychiatry. Id. Pending the determination of the accused's sanity within these procedures, the trial proceedings must be suspended.[5]

 Even if pursuant to these provisions the trial court determines that the accused has the capacity to stand trial, he is not precluded from, and must be given the opportunity of, raising a defense of insanity at the time of the commission of the offense. Owsley v. Cunningham, supra. However, where such opportunity has been afforded, a federal court is not required to review on habeas corpus the question of insanity at the time of the offense, unless new facts are alleged not readily discoverable at the time of trial, the trial judge's decision was colored by prejudice, bias, or a mob-dominated atmosphere, or the sentence is death. Tucker v. Peyton, 271 F.Supp. 667 (W.D.Va.1967). Similarly, where the issue is insanity at the time of trial, a federal court is obliged to examine the procedures by which this claim was rejected, but it is not required to review the merits of the determination where the state has done so.

In this case the opportunities afforded the defendant in order to develop his claim of insanity clearly exceeded the mandates of the Constitution and the Virginia states. Admittedly there was ample evidence to support any conclusion upon the issue. In resolving the issue against the petitioner, the trial judge thoughtfully and scrupulously considered the evidence, including the answers elicited from petitioner before and during the trial. Having determined that the procedures used complied with due process standards, it is not the province of this court to review the issue *de novo*, and to thereby substitute its judgment for the trial judge's. It is sufficient to state that none of petitioner's constitutional rights have been violated.

It is therefore ORDERED and ADJUDGED that the petition for a writ of habeas corpus be and is hereby dismissed.

---

more, these provisions place no obligation on the courts in cases where there is no reason to doubt an accused's mental health. Hawks v. Peyton, 370 F.2d 123 (4th Cir. 1966) ; Kerns v. Peyton, 292 F.Supp. 182 (W.D.Va.1968).

5. It is not clear whether, under the statutes, a court is bound by a hospital's or commission's conclusion of sanity. It would appear that once a trial court invoked the statutory procedures, due process would require that the accused be afforded an opportunity to challenge adverse conclusions. Caudill v. Peyton, 368 F.2d 563, 565 (4th Cir. 1966) ; cf. Pate v. Robinson, supra. Since in the present case the trial court did hear such further challenges, the issue is not relevant.