**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**EUGENE GUMBS, Defendant**

Crim. No. F500/1997

Territorial Court Of The Virgin Islands

Division of St. Thomas and St. John

April 30, 2000

Douglas Dick Esquire, *Assistant Attorney General*, St. Thomas, Virgin Islands, *for Government*

Queen Terry, Esquire, St. Thomas, Virgin Islands, *for Defendant*

SWAN, *Judge*

### MEMORANDUM OPINION

Before the Court is Defendant Eugene Gumbs' Motion to Dismiss the above captioned case, because he is mentally retarded and, therefore, incompetent to stand trial. For the reasons which follow, the motion will be granted.

### ISSUES

Whether an adult who is mildly or moderately mentally retarded with an I.Q. (intelligent quotient) of 52, who is also illiterate

as not to understand the days of the week, dates, addresses, birthdates, age, currency or phone numbers, and who likewise does not and would not understand the criminal proceedings against him, is competent to stand trial.

## FACTS

The Defendant is charged in an information with two counts of unlawful sexual contact in the first degree, which are felonies. (14 V.I.C. § 1708). The alleged victim is a minor female child.

Defendant was psychiatrically examined by two psychiatrists and a psychologist. Based primarily upon the psychiatrists' findings, defense counsel filed a motion to dismiss the charges, asserting that because of defendant's mental retardation, he is incompetent to stand trial.

Defendant's performance on the psychiatric tests revealed that he achieved a score of 52 which represents his I.Q. (*"intelligence quotient"*) based on the DSM-IV test *"Diagnostic Statistical Manual"* 4th Edition, American Psychiatric Association) (1994. Therefore, Defendant contends that because of his low I.Q. of 52, he is mildly or moderately mentally retarded. According to the expert testimony elicited at the hearing, a person with an I.Q. of 52 functions at the level of a five or six year old child.

Because he functions at the mental level of a five or six year old child and is mildly or moderately retarded with an I.Q. of 52, Defendant respectfully asks this Court to find him incompetent to stand trial.

Defendant further buttresses his contention by reminding the Court that pursuant to Virgin Islands Law, (14 V.I.C. § 14,[1] he is

---

[1] 14 V.I.C. 14 states:

"Capacity to commit crimes or offenses:

All persons are capable of committing crimes or offenses except —
(1) children under the age of seven years;
(2) children over the age of seven years and under the age of fourteen years, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness;
(3) idiots;
(4) persons who are mentally ill and who committed the act charged against them in consequence of such mental illness; and

incapable of committing crimes or criminal offenses. Specifically, Defendant invites attention to three subsections of section 14, supra, in support of his contention. These subsections read as follows:

> "All persons are capable of committing crimes or offenses except -
>
> (1) Children under the age of seven years;
>
> (3) Idiots;
>
> (5) Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent."

Defendant asserts that he qualifies under at least one of these categories, making him incapable of committing a crime or criminal offense, because of his mental retardation.

Additionally, despite his chronological age of an adult, Defendant infers that his mental competency is below that of a seven year old child.

### DISCUSSION

■ Due process requires a judicial determination of competence in every case in which there is reason to doubt the Defendant's competence to stand trial. *United States v. Haywood*, 155 F.3d 674 (3d Cir.1998). The Court commences its analyses by determining which party has the burden of proving the defendant's competence to stand trial when the issue of mental retardation is raised. In instances where the defendant must prove his incompetence to stand trial, the Government may not require the defendant to prove incompetence by clear and convincing evidence, but only by a balance of probabilities. *Cooper v. Oklahoma*, 517 U.S. 348, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996). Nonetheless, once the issue of a defendant's mental competency is raised, the Government bears the burden of proving that the defendant is competent to stand trial. *United States v. Teague*, 956 F.2d 1427 (7th Cir. 1992). The Court

---

(5) persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent.

is not unmindful of the Supreme Court's Opinion in Medina v. California, 505 U.S. 437, 120 L. Ed. 2d 353, 112 S. Ct. 2572 (1992) in which the Court opined that a statute placing the burden of proof on the issue of incompetency to stand trial in a criminal case upon the party asserting incompetency did not violate a Defendant's procedural due process rights. However, this Court was unable to find any local statutory provision, addressing the matter of which party has the burden of proof on the issue of proving a Defendant competent to stand trial. In such an instance, the burden is by the preponderance of the evidence.

■ From the expert testimony elicited during the competency hearing, the Court finds that there is sufficient evidence from which one can conclude that the Defendant may be incompetent to stand trial. Thus, the Court concludes that in determining whether Defendant, a mentally retarded person, is competent to stand trial, the Government bears the burden of proving his competence to stand trial.

Incompetency to stand trial is distinct from the insanity defense in that incompetency involves the Defendant's mental state at the time of trial, whereas the insanity defense involves the Defendant's mental state at the time the offense was committed. *United States v. Gold*, 790 F.2d 235, 238 (2d Cir. 1986); *United States v. Williams*, 998 F.2d 258, 264 (5th Cir. 1993). Specifically, a mentally retarded defendant is not necessarily incompetent to stand trial. *Penry v. Lynaugh*, 492 U.S. 302, 333-334, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989).

In *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam), the pivotal case on the issue of an accused's competency to stand trial, the United States Supreme Court has enunciated that in determining a defendant's competency to stand trial, a trial court must determine whether the Defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him. *See also United States v. Garrett*, 903 F.2d 1105, 1116 (7th Cir. 1990); *United States v. Leggett*, 162 F.3d 237, 242 (3d Cir. 1998). The two-part test announced in *Dusky* is more commonly known as the "understand and assist test." Importantly,

82

the test primarily focuses on "the Defendant's memory and intellectual abilities, which are crucial to the construction and presentation of his defense." *Hansford v. United States*, 124 U.S. App. D.C. 387, 365 F.2d 920, 922 (D.C. Cir. 1966).

Considering the Defendant's diagnosis of mental retardation, the Court will determine whether Defendant is competent to stand trial under the Dusky test.

Although "idiots"[2] and the "feebleminded" are mentioned in the Virgin Islands Code, the Code is conspicuously silent on the precise intelligence quotient ("I.Q.") level which defines a person in either category.

A person's I.Q. is calculated by administering, to him or her, one of the many intelligence tests accepted by the psychiatric community. In doing so, [one] will arrive at the maximonumental age that will be attained during the person's lifetime. The ratio of mental age (established by the normative peer group), "is then" divided by the chronological age. The mean IQ of 50% is 100. Anyone possessing an IQ substantially less (83 or less) is deemed mentally retarded to some degree.[3]

Mental Retardation is defined as:

A condition in which the function of the intellect is below normal. It is divided into five classes: *borderline, mild, moderate, severe, and profound*. A borderline case is marked by . . . [an] IQ of 68 to 83. A mild case is marked by an I.Q. of 52-67. A moderate case, 36-51. A severe case, 20-35. A profound case, below 20. SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE M-71 (17th ed. 1986).

Once mental retardation has been identified, the degree of retardation must be ascertained to fully appreciate the level at which the person is able to function cognitively, emotionally, and socially. Under the Sensorium, Mental Grasp and Capacity Anal-

---

[2] According to the American Psychiatric Institute the unfortunate term "lunatic" stems from the primitive language employed in the 18th Century, when "psychiatry was literally in the dark ages." The creators of Schmidt's Attorneys' Dictionary of Medicine further inform that the term "idiot" is no longer appropriate for use in official publications. The enlightened term is "mentally retarded", and this Court will employ the proper terminology.

[3] Psychological Testing. A. Anastasi. Macmillian and Co. (New York 1968).

ysis utilized to determine competency to stand trial, the most important cognitive functions that must be evaluated are:

1. Orientation (awareness of time, place, and personal identity);

2. Memory and Retention;

3. [Level] of Formal and General Knowledge;

4. Estimate of Intelligence

5. Abstraction of Ability (ability to shift from concrete to abstract ideas, and back again, as demanded by the situation);

6. Tests of Absurdity;

7. Judgment (capacity to draw correct conclusions from knowledge and information acquired by experience).[4]

Dr. Ake Mattson, a psychiatrist who testified for the defense, stated that while Defendant understands right from wrong, he does not understand the roles of the judge, the defense attorney or the prosecutor in the proceedings. Also, Defendant does not understand the meaning of *"guilty"* and *"not guilty."* Dr. Mattson further stated that considering the Defendant's level of mental retardation, he would not understand the Court's proceeding nor its procedures. Defendant, says Dr. Mattson, functions at the mental level of a 5 or 6 year old, because he is victimized by mild retardation with a concomitant I.Q. of 52. Moreover, according to Dr. Mattson, the Defendant does not understand the legal consequences of his actions. Similarly, the Defendant would understand very little of his attorney's questions. Dr. Mattson also testified that Defendant does not understand, nor has he any concept of the days of the week, dates, addresses, birth dates, ages, money (coins) or phone numbers.

In his report, which was admitted in evidence as Defendant's exhibit number one, Dr. Mattson states that Defendant is unable to

---

[4]MANUAL ON TERMINOLOGY AND CLASSIFICATION IN MENTAL RETARDATION, American Association on Mental Deficiency (New York 1973). See also American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL; MENTAL DISORDERS (1994).

read, write, except for his name, and does not know his age, address or telephone number.

Dr. Leighmin Lu, a psychiatrist and witness for the Government, testified that the Defendant is mentally retarded with an I.Q. of 50 to 55. He further stated that Defendant would not understand the Court's proceeding during a trial, because he does not have the mental capacity to do so. Likewise, Dr. Lu concluded that Defendant is not oriented day-to-day, week-to-week, and month-to-month. Dr. Lu further asserted that Defendant is illiterate in that he cannot read nor write. However, Dr. Lu did conclude that Defendant can consult with and assist his attorney. But how much assistance or the level of assistance Defendant can give his attorney is questionable, considering the impediment of Defendant's mental retardation and his inability to read and to communicate in writing. In his report, which was admitted in evidence as Government's exhibit number one, Dr. Lu further concluded that Defendant is unable to determine his own age and does not know the year he was born. Moreover, Defendant does not know numbers beyond the number five and failed to perform simple arithmetic. At the conclusion of his testimony, Dr. Lu informed the Court that Defendant may understand some of the proceedings against him. Dr. Lu likewise concluded that the Defendant cannot understand legal and medical terms should they be used at his trial.

Mr. James Smith, a government staff psychologist, testified at the hearing. Mr. Smith confirmed the Defendant's intelligence quotient (I.Q.) of 52 based on testing he conducted. Similarly, Mr. Smith opined that Defendant has a mental age of five years even though his chronological age was approximately thirty-nine years at the time of the alleged offenses. He also concluded in his report, Defendant's exhibit number two, that Defendant is unable to read, to write or to recognize numbers, and he can only recognize two colors, black and orange. Interestingly, Mr. Smith contended that Defendant will understand some of the proceedings against him, but the extent of his understanding is very difficult to ascertain or to verify.

The Government avers that because Defendant has been attending public social functions, has been observed buying drinks at these functions, and has been observed riding the public bus

unsupervised, that these activities are indicative of a person who is competent to stand trial. The Court summarily rejects the assertion that these activities constitute being competent to stand trial.

In *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991) a defendant was not shown to be competent to stand trial when he had a verbal I.Q. of approximately 62, and the psychiatrist testified that he had no ability to understand abstractions like guilt, innocence, or rights, even though he understood the basic notion of punishment and was able to function on a daily basis. Moreover, several jurisdictions have found Defendants, with I.Q.'s between 51 and 70, incompetent to stand trial because of their inability to understand courtroom proceedings. People v. Samuel, 29 Cal. 3d 489, 629 P.2d 485, 174 Cal. Rptr. 684 (Cal. 1981)[5] , *State v. Hamilton*, 373 So. 2d 179 (La.Ct.App. 1979)[6] , *People v. Santos*, 127 Misc. 2d 63, 485 N.Y.S.2d 449 (Sup. 1985)[7] , *State v. Williams*, 381 So. 2d 439 (La. 1980). In the case of Tennessee v. Benton, 759 S.W.2d 427 (Tenn. Crim. App. 1988) involving a Defendant with an I.Q. of 47 on the Weschler Adult Intelligence Scale Revised (WAIS-R), the Court concluded that the Defendant was incompetent to stand trial, because the Defendant lacked the capacity to understand the nature and object of the proceedings against him, and had insufficient present ability to consult with counsel and to assist in preparing his defense.

Similarly, this Court finds that Defendant Gumbs does not have the level of mental acumen to allow him to rationally understand the factual nature of the proceedings against him. Importantly, he cannot understand the Court's procedure nor the roles of the persons involved in the proceedings. Crucially, Defendant cannot read or write, and the best optimism is that Defendant is a functional illiterate; therefore, his attorney will encounter much difficulty in communicating with him during the trial. Undoubt-

---

[5] Superior Court of California found Defendant, with an I.Q. of 58, incompetent to stand trial.

[6] Supreme Court of Louisiana reversed the trial court finding that the moderately retarded Defendant, with an I.Q. of 56, was competent to stand trial. The Court held that the defendant who had a mental age of 6 or 7 and knew the word "rape", but had no understanding of what rape is, was incompetent to stand trial.

[7] Defendant with borderline mental retardation found incompetent to stand trial.

edly, the Defendant would be hampered in his efforts to assist his counsel during the trial, because he would be unable to effectively communicate with counsel or consult with counsel with a reasonable degree of rational understanding. Accordingly, the Court concludes that Defendant is unable to consult with his attorney in a reasonable and rational way, because of the level of his mental retardation.

The Court is mindful that 14 V.I.C. § 14(1) declares that children under the age of seven years do not have the capacity to commit crimes or offenses. The Defendant's chronological age was thirty-nine years at the time of the alleged offenses. His mental capacity, however, is below that of an average seven year old. Territorial Law concedes that a person under the age of seven does not have the mental capacity to commit a crime or an offense. Concomitantly, the same person with a mental age of less than seven years may not have the mental capacity to stand trial or to fulfill the prerequisites of the Dusky test. Thus, the Defendant's mental age buttresses the conclusion that he is incapable of understanding the criminal proceeding against him.

If this case proceeds to trial, the Court will be compelled to interrupt the proceedings at short, intermittent intervals to allow someone to attempt to explain the proceedings to the Defendant. Even with this procedure, there is no assurance that Defendant will be able to understand the proceedings. Undoubtedly, this procedure will cause innumerable delays, thereby guaranteeing a protracted trial. Moreover, the Court concludes that Defendant will be unable to engage in any meaningful consultation with his attorney on pertinent matters in the case and in his defense.

The Court concludes that a person who is afflicted with the malady of mild retardation, accompanied by an I.Q. of 52 to 55, who is also profoundly illiterate to the extent that he is not oriented on a day-to-day or daily basis, and who cannot comprehend the legal proceedings against him, is not competent to stand trial. The due process clause of the Fourteenth Amendment prohibits the criminal prosecution of a Defendant who is not competent to stand trial. *Medina*, 112 S. Ct. at 2574.

The Court further concludes that Defendant is incapable of understanding the nature of the charges against him and does not

have sufficient present ability to consult with his counsel with a reasonable degree of rational understanding and to participate in his defense in a meaningful or rational way. Likewise, the Court concludes that Defendant would not have a rational as well as a factual understanding of the proceeding against him, if this case goes to trial.

Additionally, the Court concludes that the Government has not sustained its burden of proving the Defendant's competency to stand trial. The Court cautions, however, that this decision is not to be used as carte blanc precedent in future criminal cases involving the Defendant, in an attempt to insulate him from any criminal liability resulting from his conduct. Any future criminal cases involving this Defendant shall be individually evaluated and determined by the evidence elicited from both sides in the case, to determine whether he is competent to stand trial. Considering the inexactitude of expert psychiatric and psychological testimony and opinions, it is conceivable that in a future case, the preponderating expert testimony may differ from similar testimony in this case.

■ Accordingly, the Defendant's Motion to Dismiss this case, because of his incompetency to stand trial is GRANTED. An appropriate order will be entered accordingly.