**CLEMENTO MONSANTO, Petitioner**
**v.**
**THE GOVERNMENT OF THE VIRGIN ISLANDS, Respondent**

SX-06-CV-696

Superior Court of the Virgin Islands

Division of St. Croix

December 3, 2007

GORDON RHEA, ESQ., Richardson, Patrick, Westbrook & Brickman, LLC, Mount Pleasant, SC, *Attorney for Petitioner*.

DOLACE MCLEAN, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, VI, *Attorney for Respondent*.

D'ERAMO, *Judge*

## MEMORANDUM OPINION AND ORDER

(December 3, 2007)

Petitioner Clemento Monsanto was convicted of four counts of robbery and sentenced to four (4) concurrent terms of fifteen (15) years. Monsanto filed this habeas petition, requesting release from detention on the grounds that his due process rights were violated when the trial proceeded absent a finding that he was competent to stand trial. For the reasons stated herein, Monsanto's habeas petition is granted and his release so ordered.

## FACTS AND PROCEDURAL BACKGROUND

Following his alleged involvement in an armed robbery on April 22, 2000, Monsanto was charged with and ultimately convicted of four counts of robbery in the first degree, a violation of 14 V.I.C. § 1862(2).[1]

Monsanto's first attorney, Terri L. Griffiths, filed a Motion for Psychiatric Evaluation and Supporting Memorandum on July 28, 2000. A psychiatric evaluation was requested "to assist this Court in determining whether the Defendant is competent to stand trial." *Griffiths Motion, p. 2.* Attorney Griffiths explained:

1. The undersigned attorney has spent numerous hours with the Defendant in an attempt to prepare his defense.
2. On July 10, 2000, the Defendant, the undersigned attorney, Assistance Attorney General Marie Drigo, and Assistance Attorney General Daniel King met for approximately three (3) hours in an effort to negotiate a plea agreement.
3. The undersigned discussed the plea agreement at length with the Defendant and the viability of various trial strategies and

---

[1] The underlying case is Superior Court of the Virgin Islands Criminal Case Number 119/2000 in the District of St. Croix.

defenses with the Defendant subsequent to the meeting with the Government.

4. Despite undersigned counsel's numerous conferences with the Defendant, the Defendant appears unable to understand the nature of the proceedings and make a rational decision concerning the options available to him.

5. On July 26, 2000, the Defendant appeared before this Court for purposes of changing his plea of Not Guilty and entering a plea pursuant to a plea agreement entered into with the Government. On this date, the Defendant did not appear to understand the nature or object of the proceedings despite numerous conferences with counsel.

6. On July 26, 2000, the Defendant advised this Court that he has difficulty understanding communications directed towards him. During the course of the proceedings, the Defendant was unable to consult with the undersigned counsel with a reasonable degree of rational understanding. . .

*Griffith's Motion, p. 2-3.*

The Court did not rule on the Motion and no responsive pleading was filed. As Attorney Griffiths left the Virgin Islands to relocate in Florida, the Court approved the stipulated substitution of Attorney Nathania Bates.

On September 15, 2000, Attorney Bates filed a Renewed Motion for Psychological Evaluation and Supporting Memorandum of Law. In the Supporting Memorandum, Attorney Bates explained, "In the instant case, on July 26, 2000, July 31, 2000, and September 6, 2000, during the course of proceedings before the Court, despite consultations with two different counsel, the Defendant appeared confused and unable to appreciate the nature of the proceedings against him."

On September 27, 2000, the Court signed the proposed Order submitted by Attorney Bates that granted the Defendant's Renewed Motion for Psychological Evaluation. The Order required "that the psychiatric and/or psychological test(s) given should determine whether the Defendant is competent to stand trial, and whether the Defendant was suffering from a mental disease or defect at the time the alleged offense was committed[.]"

Dr. Gloria Mendez, a psychologist, performed a psychological evaluation of Monsanto on October 3, 2000. Dr. Mendez reported, in part, the following behavioral background:

> When Mr. Monsanto was one year and seven months old, hot oil from the stove fell on his head. Mr. Monsanto was hospitalized and reportedly had some type of surgery due to the burnt skin. . . Mr. Monsanto was a special education student and also a client at the Frederiksted Mental Health Clinic. . . from November 1974 to approximately January 1978. *Mendez Evaluation, p. 1.*

As to Monsanto's mental status, Dr. Mendez made the following findings [stated in pertinent part]:

> Mr. Monsanto's abstract reasoning skills are poor. He had difficulty making verbal associations. . . Mr. Monsanto's auditory and visual memory skills are weak. His visual discrimination skills are poor. He had difficulty determining essential details missing in pictures presented. Mr. Monsanto's eye hand coordination skills are weak. . . *Mendez Evaluation, p. 2.*

Dr. Mendez stated the following, in full, about Monsanto's knowledge of the legal system:

> During the interview, Mr. Monsanto showed adequate understanding of the court and legal matters. He knew the name of his lawyer and stated that his lawyer's duties are to help him out when they go to court. Mr. Monsanto stated that the judge listens to what you have to say and decides if to send you to jail. *Mendez Evaluation, p. 3.*

Dr. Mendez found Monsanto had an Intelligence Quotient ("I.Q.") of 51[2], and concluded that Monsanto was competent to stand trial on the following grounds:

> The results of the evaluation suggest Mr. Monsanto appears to be mildly mentally retarded. He has poor intellectual, reasoning, and

---

[2] Dr. Mendez's report explained, "Mr. Monsanto obtained the following scores in the Wechsler Adult Intelligence Scale-Revised: Verbal I.Q. of 53, Performance I.Q. of 58, and Full Scale I.Q. of 51." *Mendez Evaluation, p. 2.* Dr. Mendez's report states that Monsanto was tested at age 12 by Dr. Juan Martinez and was found to have a Full Scale I.Q. of 50. *Mendez Evaluation, p. 1-2.* Dr. Mendez's report further states that Monsanto was tested at age 15 by Dr. George Woodley and found to have a Full Scale I.Q. of 64. *Mendez Evaluation, p. 2.*

memory skills. Despite his limited intellectual skills, Mr. Monsanto appears competent to stand trial. His disability does not severely impair his ability to understand right from wrong. He understands that stealing is wrong and has adequate knowledge of the legal system. Mr. Monsanto claims he did not want to participate in the robbery but felt threaten [sic] to do it. Mr. Monsanto does not appear to suffer from a psychiatric illness. He does not have delusions or hallucinations. *Mendez Evaluation, p. 3.*

A competency hearing was never held, and the Court never made any finding regarding Monsanto's competence. The matter proceeded to trial on October 23, 2000, and Monsanto was found guilty on October 26, 2000. He was subsequently sentenced on November 22, 2000, and has since been under the care, custody and control of the Bureau of Corrections at the Golden Grove Correctional Facility in Kingshill, St. Croix.

On November 9, 2006, Monsanto filed his *pro se* Petition for Habeas Corpus challenging the adequacy of his representation at trial. On May 18, 2007, the Court held a hearing on the Petition at which Monsanto complained of what the Court interpreted as the failure of counsel to request a competency hearing. On June 18, 2007, the Court issued an Order appointing Attorney Gordon Rhea to represent Monsanto with respect to his habeas Petition.

On September 28, 2007, Attorney Rhea filed a new Petition for Writ of Habeas Corpus on Monsanto's behalf. The Government filed its Second Response to Petition for Writ of Habeas Corpus on October 29, 2007. Monsanto filed his Reply to Second Response to Petition for Writ of Habeas Corpus on November 13, 2007.[3]

On November 8, 2007, one year after Monsanto filed his *pro se* habeas petition, a hearing was held in the matter. Monsanto appeared with his attorney, Gordon Rhea, and Attorney Dolace McLean appeared on behalf of the Government. The Court heard arguments and now issues this opinion on the matter.

---

[3] The Undersigned was in receipt of the courtesy copy of this Reply prior to the November 8, 2007, hearing.

## DISCUSSION

### I.

██ Habeas corpus is an equitable remedy whereby individuals who are restrained in violation of their constitutional rights may seek release. *Wilkinson v. Dotson*, 544 U.S. 74, 78-79, 125 S. Ct. 1242, 1246, 161 L. Ed. 2d 253 (2005); *Walker v. Wainwright*, 390 U.S. 335, 336, 88 S. Ct. 962, 963, 19 L. Ed. 2d 1215 (1968) (stating that "the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention.") Section 1301 of Title 5 of the Virgin Islands Code provides that "[e]very person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." Section 1302 of Title 5 provides in pertinent part that "the petition shall state in what the alleged illegality consists" in order to establish a basis for a writ of habeas corpus.

██ A habeas hearing is the appropriate vehicle for an accused to assert that his constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial.[4] *Pate v. Robinson*, 383 U.S. 375, 386, 86 S. Ct. 836, 842, 15 L. Ed. 2d 815 (1966). If the

---

[4] In the following cases, courts considered habeas challenges on the basis of failure to receive competency hearings, thus implicitly supporting the proposition that habeas is a proper vehicle through which to make the challenge: *United States ex rel. Johnson v. Brierley*, 334 F. Supp. 661 (E.D. Pa. 1971); *Graham v. Gathright*, 345 F. Supp. 1148 (W.D. Va. 1972); *United States ex rel. Roberts v. Yeager*, 402 F.2d 918 (3d Cir. 1968); *Stokes v. United States*, 538 F. Supp. 298 (N.D. Ind. 1982); *Brizendine v. Swenson*, 302 F. Supp. 1011 (W.D. Mo. 1969); *Ex parte Hagans*, 558 S.W.2d 457 (Tex. Crim. 1977); *Silverstein v. Henderson*, 706 F.2d 361 (2d Cir. 1983), *cert. denied*, 464 U.S. 864, 104 S. Ct. 195, 78 L. Ed. 2d 171 (1983); *Nathaniel v. Estelle*, 493 F.2d 794 (5th Cir. 1974) (*overruled on other grounds Bruce v. Estelle*, 536 F.2d 1051 (5th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S. Ct. 767, 50 L. Ed. 2d 770 (1977)); *South v. Slayton*, 336 F. Supp. 879 (W.D. Va. 1972); *Wilson v. Cox*, 312 F. Supp. 209 (W.D. Va. 1970); *Sims v. Lane*, 411 F.2d 661 (7th Cir. 1969), *cert. denied*, 396 U.S. 943, 90 S. Ct. 378, 24 L. Ed. 2d 244 (1969) *and disagreed with on other grounds Alicea v. Gagnon*, 675 F.2d 913 (7th Cir. 1982); *Crenshaw v. Wolff*, 504 F.2d 377 (8th Cir. 1974), *cert. denied*, 420 U.S. 966, 95 S. Ct. 1361, 43 L. Ed. 2d 445 (1975); *Bruce v. Estelle*, 483 F.2d 1031 (5th Cir. 1973), *later appeal*, 536 F.2d 1051 (5th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S. Ct. 767, 50 L. Ed. 2d 770 (1977) and (*overruled on other grounds Zapata v. Estelle*, 585 F.2d 750 (5th Cir. 1978), *later proceeding*, 588 F.2d 1017 (5th Cir. 1979)) *as stated in Spivey v. Zant*, 661 F.2d 464 (5th Cir. 1981), *rehearing denied*, 667 F.2d 93 (5th Cir. 1982), *and cert. denied*, 458 U.S. 1111, 102 S. Ct. 3495, 73 L. Ed. 2d 1374 (1982), *and later appeal*, 683 F.2d 881 (5th Cir. 1982); *Hawks v. Peyton*, 370 F.2d 123 (4th Cir. 1966),

court determines that a petitioner's rights were, in fact, violated, then the accused must be discharged, unless given new trial within a reasonable time. *Id.*

## II.

■ Due process requires that there be a "record-based judicial determination of competence in every case in which there is reason to doubt the defendant's competence to stand trial." *U.S. v. Haywood*, 155 F.3d 674, 680 (3d Cir. 1998); *see also Virgin Islands v. Gumbs*, 42 V.I. 79 (Terr. Ct. 2000). The procedure for determining the competence of a defendant is governed by the Federal Rules of Criminal Procedure and Title 18, Chapter 313 of the United States Code. *Government of the Virgin Islands v. Durant*, 48 V.I. 278 (V.I. Super. 2007) (noting Superior Court Rule 7 makes those rules applicable to the Superior Court of the Virgin Islands). Title 18, § 4241 (a) of the U.S. Code provides:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, . . .[5] the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Subsection (b) of 18 U.S.C. § 4241 provides that prior to the competency hearing, the court may order that a psychiatric evaluation be conducted and a report submitted that complies with 18 U.S.C. § 4247(c). Subsection (c) provides in pertinent part that the psychiatric report must include:

---

*cert. denied*, 387 U.S. 925, 87 S. Ct. 2044, 18 L. Ed. 2d 982 (1967); *McCune v. Estelle*, 534 F.2d 611 (5th Cir. 1976).

[5] The phrase omitted is "or at any time after the commencement of probation or supervised release and prior to the completion of the sentence," because it was added in the July 27, 2006 revision. Legislative Action July 27, 2006, Pub. L. 109-248, Title III, § 302(2), 120 Stat. 619. Subsection (a) of § 4241 was otherwise as stated during the course of the proceedings against Monsanto.

(1) the person's history and present symptoms;

(2) a description of the psychiatric, psychological, and medical tests that were employed and their results;

(3) the examiner's findings; and

(4) the examiner's opinions as to diagnosis, prognosis, and—

(A) if the examination is ordered under section 4241, whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.][6]

■ A psychiatric evaluation is not dispositive on the issue of whether an accused is competent to stand trial. In *Pate v. Robinson,* the doctor stated in his report that the accused knew the nature of the charges against him and was able to cooperate with counsel, but the court held that, while this may tend to indicate the accused is able to assist in his defense, the report could not constitute a court finding of competence. *Pate* at 385.

■ A mentally retarded defendant is not necessarily incompetent to stand trial. *Gumbs* at 82 (citing *Penry v. Lynaugh,* 492 U.S. 302, 333-334, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989)). However, once the defendant's competency is called into question, the burden is on the government to prove by a preponderance of the evidence that a mentally retarded person is competent to stand trial. *Id.* at 81.

Where evidence raises a bona fide doubt as to defendant's competence to stand trial, the court must *sua sponte* order a competency hearing. 18 U.S.C. § 4241(a). In *Drope v. Missouri,* 420 U.S. 162, 177, 95 S. Ct. 896, 906, 43 L. Ed. 2d 103 (1975), the Supreme Court held that defense counsel's pretrial contention that "the defendant is not a person of sound mind and should have a further psychiatric examination before the case should be forced to trial" was alone sufficient to raise the issue of defendant's competence to stand trial.

■ Failure to hold a competency hearing when doubt has been cast as to a defendant's competence deprives the accused of his constitutional right to a fair trial. *Pate* at 385. Upon determination that an accused's

---

[6] This section of § 4247 has remained unchanged since the proceedings against Monsanto.

constitutional rights were abridged by his failure to receive adequate hearing on his competence to stand trial, a writ of habeas corpus must issue and the accused must be discharged, unless given new trial within reasonable time. *Id.* at 386.

■ A defendant can not waive his constitutional right to a competency hearing. In *Pate,* the Supreme Court held that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."[7] *Id.* at 384.

In *Pate,* the government urged the Court to permit the state to hold a post-trial hearing to determine whether the accused was competent at the time of his trial. *Id.* The Supreme Court held that such a hearing would not be sufficient to cure the violation because six years had passed, and the hearing would have to be based solely on information contained in the printed record. *Id.* at 387. Accordingly, the Supreme Court granted the habeas petition and ordered the accused discharged. *Id.* at 386.

---

[7] The court in *Roy v. State*, 680 So. 2d 936, 938 (Ala. Crim. App. 1996) discussed this issue thoroughly:

> Numerous courts have addressed this issue and have concluded that an incompetent cannot waive his right to a competency hearing. *See also People v. Lucas*, 47 Mich. App. 385, 209 N.W.2d 436 (1973) (both defendant and his attorney are prohibited from waiving the right to have the court determine defendant's capacity to stand trial); *State v. Bauer*, 310 Minn. 103, 245 N.W.2d 848 (1976) (trial court has continuing duty during trial to institute procedures to evaluate defendant's competency if a doubt arises as to competency.); *In re Davis*, 8 Cal. 3d 798, 505 P.2d 1018, 106 Cal. Rptr. 178 (1973) ("this court has held that when a 'doubt' arises in the mind of the trial judge regarding defendant's present sanity or competence to stand trial, it becomes his duty to certify the defendant for a sanity hearing; the matter is jurisdictional and cannot be waived by defendant or his counsel"); *Miller v. State*, 498 S.W.2d 79 (Mo. App. 1973) (trial counsel held to be ineffective because he purported to waive a competency determination and allow the defendant to plead guilty); *Demos v. Johnson*, 835 F.2d 840 (11th Cir. 1988), *cert. denied*, 486 U.S. 1023, 108 S. Ct. 1998, 100 L. Ed. 2d 229 (1988). (despite defendant's statement that he was capable of assisting in his defense, the failure of the trial court "to grant a psychiatric examination or to make further inquiry into the accused's competence constituted a *Pate* violation and denied him a fair trial" under federal and Alabama law); *People v. Lowe*, 109 A.D.2d 300, 491 N.Y.S.2d 529 (1985) (incompetent defendant cannot waive safeguards enacted to ensure that an incompetent person cannot be convicted); *People v. Johnson*, 15 Ill. App. 3d 680, 304 N.E.2d 688 (1973) (neither defendant nor trial counsel could waive defendant's right to jury trial in restoration hearing to determine the defendant's competency); *Adams v. Wainwright*, 764 F.2d 1356 (11th Cir. 1985), *cert. denied*, 474 U.S. 1073, 106 S. Ct. 834, 88 L. Ed.2d 805 (1986); (right to a competency hearing cannot waived).

## III.

We begin by considering whether reasonable cause existed to question whether Monsanto was suffering from a mental defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Attorney Griffiths, Monsanto's first attorney, stated that despite spending hours talking to Monsanto, he appeared "unable to understand the nature of the proceedings and make a rational decision concerning the options available to him." *Griffiths Motion, p. 1.* She also stated that at the Change of Plea hearing on July 26, 2000, Monsanto "was unable to consult with [her] with a reasonable degree of rational understanding." *Griffiths Motion, p. 2.*

Attorney Bates, Monsanto's second attorney, stated that despite consultations and numerous court proceedings, that Monsanto "appeared confused and unable to appreciate the nature and purpose of the proceedings against him." *Bates Motion, p. 4.*

In court hearings, there was indication that Monsanto was having trouble understanding the nature and consequences of the proceedings. In the hearing on July 26, 2000, Judge Ross was unable to impress upon Monsanto the nature of sentencing pursuant to a plea agreement.[8] In the

---

[8] The transcript from that date reveals Monsanto had significant difficulty in the hearing that day. It records as follows:

THE COURT: Mr. Monsanto, I understand you wish to plea guilty.

MR. MONSANTO: Yes; for a plea agreement.

THE COURT: What is the plea agreement as you understand it?

. . .

MR. MONSANTO: It's four years incarceration, two years suspended sentence with four years probation; four years probation.

THE COURT: That the Government will recommend that?

MR. MONSANTO: Yes, Your Honor.

THE COURT: Did you also understand I can send you to jail for 15 years?

MR. MONSANTO: Yes, I understand, but changing and saying because I go along with the plea agreement.

THE COURT: What I am saying to you all the Government is going to recommend to the Court that you go to jail for four years and you plea guilty at sentencing. I can send you to jail for ten years. Do you understand that?

MR. MONSANTO: I understand.

hearing on July 31, 2000, the Court acknowledged that Monsanto was "a little slow."[9] At the sentencing hearing on September 6, 2000, Monsanto advised the Court that he pled guilty because he was being threatened, but indicated he still wanted to honor the plea agreement.

The psychiatric evaluation performed by Dr. Mendez also indicated that there may be competency issues with respect to Monsanto. The report describes in the behavioral background the childhood accident that may

---

THE COURT: And you are willing to plea guilty knowing I can send you to jail for up to 15 years?

MR. MONSANTO: Well, I could explain myself.

THE COURT: I understand. Even after you explain, I can send you to jail for 15 years even after you explain it.

MR. MONSANTO: You are trying to fight me now.

THE COURT: I am telling you I can still even if you explain what happened, I can send you to jail for 15 years.

MR. MONSANTO: I understand. I can ask you one thing? What make when a police officer come with a search warrant and with no name on top of it—with no name on top of it.

. . .

THE COURT: How far did you go in school?

MR. MONSANTO: I went eleven grade.

. . .

THE COURT: Till eleven grade?

MR. MONSANTO: I been in a low class, low grade; ungraded.

. . .

THE COURT: Can you read?

MR. MONSANTO: Not so well.

. . .

THE COURT: Have you understood everything your attorney has said so far?

MR. MONSANTO: Kind of.

THE COURT: What you don't understand?

MR. MONSANTO: Certain things like what I been concerned on is the plea agreement if I am going to get the four-year sentence or the two years.

*Transcript from July 26, 2000, hearing, p. 12-17.* The hearing concluded without entering the plea agreement on that date.

[9] The transcript from the hearing on that date records as follows:

THE COURT: Are you now suffering from any illness?

MR. MONSANTO: Well, mean like in the mentality a little bit.

THE COURT: You're a little bit slow?

MR. MONSANTO: Yes.

*Transcript from July 31, 2000, hearing, p. 25.*

have resulted in mental deficiencies that Monsanto alleges he experiences. This section also indicates that Monsanto has had difficulties since childhood, having been a special education student and in the care of the Frederiksted Mental Health Clinic from a young age.

The evaluation reported Monsanto obtained a score of 51 on the I.Q. test Dr. Mendez administered. *Mendez Evaluation, p. 2.* She reported Monsanto took two I.Q. tests as a child and received below average scores on those as well (one score of 50 and another of 64). *Id. at 1-2.*

The section on Monsanto's mental status also reports a litany of areas in which he tested poorly, including visual memory skills, visual discrimination skills, determining essential details missing in pictures present, and eye-hand coordination skills. Mitigating these deficiencies are Dr. Mendez's findings that Monsanto was "orientated [sic] as to time, place, and person" and that he "[did] not appear to have hallucinations or delusions." *Mendez Evaluation, p. 3.*

Dr. Mendez stated that Monsanto appeared "mildly mentally retarded." *Id.* She explained that he "[had] poor intellectual, reasoning, and memory skills." *Id.* She concluded that he was nonetheless competent to stand trial, because (1) "[h]is disability [did] not severely impair his ability to understand right from wrong," (2) he had "adequate knowledge of the legal system,"[10] and (3) he did not appear to suffer from a psychiatric illness. *Id.*

■ The psychiatric evaluation on Monsanto did not satisfy all the requirements set forth in 18 U.S.C. § 4247(c).[11] Although the report does

---

[10] Dr. Mendez concluded Monsanto had adequate knowledge of the legal system based on his statements that his lawyer "help[s] him out when they go to court" and that the judge "listens to what you have to say and decides if to send you to jail."

[11] Subsection (c) provides in pertinent part that the psychiatric report must include:

(1) the person's history and present symptoms;

(2) a description of the psychiatric, psychological, and medical tests that were employed and their results;

(3) the examiner's findings; and

(4) the examiner's opinions as to diagnosis, prognosis, and—

(A) if the examination is ordered under section 4241, whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.]

set out Monsanto's history and present symptoms, a description of the tests that were employed and their results, Dr. Mendez's findings, and her opinions as to diagnosis, it fails to apply the correct standard for determining competency under Section 4247(c)(4)(A). The correct standard is "whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4247(c)(4)(A).

To Dr. Mendez's credit, the psychological evaluation fully complied with the Court's Order requiring "that the psychiatric and/or psychological test(s) given should determine whether the Defendant is competent to stand trial, and whether the Defendant was suffering from a mental disease or defect at the time the alleged offense was committed[.]" The standard as set forth in the Order, however, more closely resembles that for an insanity plea, such standard focusing on an accused's mental state at the time of the *offense* as opposed to at the time of *trial*. 18 U.S.C. § 4247(c)(4)(B).

█ In light of the assertions of both of Monsanto's counsel, the difficulty he experienced at court hearings, and the psychiatric evaluation which diagnosed Monsanto as mildly mentally retarded with limited intellectual skills, the Court concludes that reasonable cause existed to believe Monsanto may have been suffering from a mental defect rendering him incompetent to stand trial. Applying the competency standard of 18 U.S.C. § 4241(a), there were numerous indications that Monsanto was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.[12] Where evidence raises a bona fide doubt as to defendant's competence to stand trial, the court must *sua sponte* order a competency hearing. 18 U.S.C. § 4241(a).

---

[12] While not a basis for the Court's decision in the instant case, the Court notes that Monsanto has been incarcerated since May 2000. On November 24, 2000, he was sentenced to four (4) concurrent terms of fifteen (15) years and has served 7 1/2 years. The Court further notes that Jason Dickerson and Kaleem Truell, also charged in this incident, were sentenced to ten (10) years and eight (8) years of incarceration, respectively, after pleading guilty. Dickerson was carrying a handgun during the robbery while Monsanto was not. The Court finally notes that had Monsanto's guilty plea not been vacated, the People would have recommended two (2) years incarceration (a single four year term with two years suspended) pursuant to the plea agreement.

176

 The trial court erred in not *sua sponte* ordering a competency hearing in light of the allegations of counsel, the findings of the psychiatrist, and Monsanto's conduct during court hearings. This error amounted to a violation of Monsanto's due process rights, and he has been substantially prejudiced by that error.[13]

---

[13] The United States Supreme Court has held that a limited hearing to determine competency more than six (6) years after petitioner's trial would not be sufficient to cure a due process violation, *Pate v. Robinson*, 383 U.S. 375, 386, 86 S. Ct. 836, 842, 15 L. Ed. 2d 815 (1966). More than seven (7) years have passed since Monsanto's trial. Accordingly, it is unlikely that the violation of Monsanto's rights can be cured by a retrospective determination of Monsanto's competency.